H. B. COLE and J. M. THOMAS, Appellants, v. THE RICHARDS IRRIGATION COMPANY, a Corporation, and Others, Respondents.

No. 1482.   (75 Pac. 376.)

1. **Waters and Water Courses: Appropriation: Vested Rights: Diversion.**
Where the waters of a natural stream have been appropriated and put to a beneficial use, the rights thus acquired include an interest in the stream from the point where the waters are diverted to the source from which the supply is obtained, entitling the appropriator to sue a person having no interest in the stream for any interference therewith which materially deteriorates the quantity or quality of the water.

2. **Same: Rights of Appropriators.**
Constitution, article 17, section 1, providing that all existing rights to the use of any of the waters of the State for any useful or beneficial purpose are hereby recognized and confirmed, deprives any person who has not acquired an interest in a stream of the right to go on the stream and interfere with the existing rights of others so as to destroy or cut off the source of supply of such stream, though such source of supply consists of a pond or lake.

3. **Same: Sources of Supply: Lakes.**
Where certain lakes formed a part of the source of supply of a creek, and, with the exception of one of the lakes, formed a part of the natural channel of one of the tributaries thereof, prior appropriators of the waters of the creek were entitled to the same usufructuary rights to the waters naturally flowing and collecting in the lakes, which eventually flowed into the main channel, as they have in the balance of the natural flow of the creek.

(Decided February 5, 1904.)

Appeal from the Third District Court, Salt Lake County.—*Hon. W. C. Hall*, Judge.

Action to quiet title to certain reservoir sites. From a judgment in favor of the defendants, the plaintiffs appealed.

AFFIRMED.

*J. M. Thomas, Esq.*, and *Messrs. Pierce, Critchlow & Barrette* for appellants.

*Messrs. Sutherland, Van Cott & Allison* for respondents.

### STATEMENT OF FACTS.

This is an action to quiet title to six reservoir sites and to all surplus waters that flow into said sites from the country surrounding them, and to restrain defendants from interfering with any of the reservoirs and reservoir sites, dams, headgates, or other improvements thereon, or from appropriating to their own use any of the waters stored or to be stored therein. Four of these reservoir sites are situated within the watershed and near the headwaters of Little Cottonwood Canyon, and the other two reservoir sites are situated lower down, and on the main channel of Little Cottonwood creek. The complaint contained three causes of action. The first and second causes of action were to recover damages from defendants for their alleged wrongful interference with some of the reservoir sites, and the alleged appropriation of the waters stored therein; and the third cause of action to quiet plaintiffs' title to the several sites and to all surplus waters flowing therein, and to enjoin defendants from interfering with plaintiff's rights to the same. Defendants demurred to the first and second causes of action, which demurrer was sustained by the court. The plaintiffs declined to amend, and the case was tried on the issues raised by the allegations of the third cause of action, and defendants answered thereto.

The complaint alleges and the answer admits that Little Cottonwood creek is a natural stream of water, which from time immemorial has flowed continuously through Little Cottonwood Canyon; that for many years the natural and ordinary waters of said stream constituting the primary waters thereof have been and are now

appropriated by farmers and others residing in Salt
Lake county, Utah, to useful and beneficial purposes;
that the volume of waters flowing continuously at all
seasons of the year through Little Cottonwood creek
and constituting the primary waters thereof is a stream
equal to 185.30 cubic feet per second; that the waters of
said creek are derived from various springs, lakes, and
other natural sources of water supply, and all are trib-
utary to said creek, and lie within the watershed
thereof, and at times there is a surplus of waters in ex-
cess of said primary waters. It further appears from
the record that at different times between the first day
of October, 1892, and the fifteenth day of July, 1896,
plaintiffs and their predecessors in interest located the
reservoirs mentioned, viz., Red Pine Reservoir No. 1,
Red Pine Reservoir No. 2, White Pine Reservoir No. 3,
Minnie Lake Reservoir, Alta Reservoir, and Gadd
Valley Reservoir. Plaintiffs in due time posted notices
of their intention to appropriate for storage in these
reservoirs, when completed, the surplus and unappro-
priated waters that flowed in and through the several
reservoir sites mentioned, had surveys made of the
sites, and filed plats of the same in the United States
Land Office at Washington, D. C. Some work was done
on the several sites thus claimed and located. Small
embankments of earth and stone were thrown up across
the outlets of the lakes, trenches were dug therein, and
headgates constructed, so that a portion of the natural
storage water could be drained off. All of these reser-
voir sites except Alta and Gadd Valley are small nat-
ural lakes situated on and near the head of tributaries
of Little Cottonwood creek. These lakes, which are
nothing more than small basins in the canyons, of a few
acres each, are supplied and filled with waters which
eventually find their way into said creek. The defend-
ants concede the right of plaintiffs to dam up the outlets
of the lakes and hold back the surplus and unappro-
priated waters that flow therein, but deny their right to
lower the outlets and drain the lakes of water which the

plaintiffs have not held back and stored by means of their artificial embankments; whereas the plaintiffs claim the right to not only draw off the surplus waters stored by them, but to cut down the natural barriers at the outlets, and drain the lakes of the water which nature has stored therein. This appears to be about the only material controverted question involved in the case, as the evidence shows that the Alta and Gadd Valley reservoirs are uncompleted, and in no condition to hold water.

A. F. Doremus, the state engineer, was called as a witness, and testified that he made an examination of the lakes in 1901, and found that Red Pine No. 1 is formed by a natural barrier across the bed of the canyon, composed of large cubes of granite, earth, and gravel. Through this barrier the plaintiffs had cut a channel from seven to eight feet in depth in which a culvert had been built. ''Above this lake, and in the same neighborhood, were three others. The only overflow that was apparent was from the lower lake. From the second lake you could hear the water running, but you could not see a continuous stream. You could see it in places between the spaces in the rocks. It escaped from this barrier, and discharged into the other lake. This, in a general way, describes the situation. As to the artificial work done on Red Pine No. 1, my opinion is that it is not capable of storing water to any greater extent than the natural barrier would have done. In the first place, it was not much, if any, higher. In the second place, it was not constructed in a manner that would hold water as well as the natural barrier. It would be like substituting a leaky barrel for a tight barrel. It was not calculated to hold water. There was a small overflow at Red Pine No. 1.'' The record shows that practically the same conditions existed at the other lakes. It will thus be observed that the work done on the several reservoirs was not of a character to increase their capacity for holding water. Therefore the only change made by plaintiffs affecting the volume of water

in Little Cottonwood creek was to drain the lakes in a few days by drawing therefrom large quantities of water, which from time immemorial had gradually, during the hot summer months, when most needed, found its way into the main channel of the creek. The effect of the course thus pursued by plaintiffs was to diminish, rather than increase, the supply of water in this creek. The court found the issues in favor of the defendants, and plaintiffs appealed.

McCARTY, J., after stating the facts, delivered the opinion of the court.

It is settled in this arid region by abundant authority that when the waters of a natural stream have been appropriated according to law, and put to a beneficial use, the rights thus acquired carry with them an interest in the stream from the points where the waters are diverted from the natural channel to the source from which the supply is obtained, and any interference with the stream by a party having no interest therein that materially deteriorates the water in quantity or quality previously appropriated, to the damage of those entitled to its use, is unlawful and actionable. Kinney on Irrigation, 249; Bear River & Auburn Water & Min. Co. v. N. Y. Min. Co., 8 Cal. 327, 68 Am. Dec. 325; Hill v. King et al., 8 Cal. 337; Butte Canal & Ditch Co. v. Vaughn, 11 Cal. 143, 70 Am. Dec. 769; Phœnix Water Co. v. Fletcher, 23 Cal. 482; Natoma Water & Min. Co. v. McCoy et al., 23 Cal. 491; Stein Canal Co. v. Kern Island Irr. Co., 53 Cal. 563; Lobdell v. Simpson, 2 Nev. 274, 90 Am. Dec. 537. Section 1, art. 17, Const. Utah, provides that "all existing rights to the use of any of the waters of this State for any useful or beneficial purpose, are hereby recognized and confirmed." It will thus be observed that the organic law of this State has put it beyond the power of any party to lawfully go upon a stream of water in which he has acquired no right, and interfere with existing rights, or to destroy or cut off the source

27 Utah 14

of supply of such stream because it happens to be a pond or lake. It is a matter of common knowledge that some of the most valuable and permanent sources of water supply in this State are its numerous lakes, which bodies of water vary in size from a few square rods to several townships of land in extent, and sections 1265, 1266, Revised Statutes 1898, recognize the rights that have been acquired by appropriation of the waters of the lakes as well as other natural sources of supply within the State.

It is conceded that respondents are, and for many years have been, the owners of and entitled to the use of all the normal flow or primary waters of Little Cottonwood creek. Therefore, in the light of the foregoing principles, the only question for our determination is, do the natural waters of the lakes under consideration form a part of the source of supply of Little Cottonwood creek? If they do, then the judgment of the district court must be affirmed. The great preponderance of the evidence not only shows that the lakes in question form a part of the source of supply of this creek, but, with the exception of the upper lake, they form a part of the natural channel of one of its tributaries; hence it necessarily follows that respondents have the same usufructuary rights to the waters which naturally flow and collect in these lakes, which eventually find their way into the main channel, as they have to the balance of the natural flow of the creek. Malad Val. Irr. Co. v. Campbell (Idaho), 18 Pac. 52. While it is the policy of the State to encourage enterprises which tend to increase the available supply of water in the State, yet parties engaged in these laudable undertakings must respect the vested rights of others to the streams and other sources of water supply throughout the State accrued to them by prior appropriation.

The judgment is affirmed; the costs of this appeal to be taxed against appellants.

BASKIN, C. J., and BARTCH, J., concur.