(June 22, 1908.)

## T. A. JOSSLYN, Respondent, v. M. J. DALY, Appellant.

[96 Pac. 568.]

EVIDENCE—DECLARATIONS AND ADMISSIONS OF GRANTOR—IRRIGATION—
WATER RIGHTS, DITCHES AND CANALS APPURTENANT TO LAND—
RES ADJUDICATA—WATERS TRIBUTARY TO A STREAM.

1. Statements and admissions by deed, mortgage or otherwise derogatory to his title or the interest previously conveyed, made by a grantor, subsequent to parting with title, are not admissible against or binding upon the grantee, who had previously acquired the title to the property.

2. The vesting of title is determined by the legal effect of the terms of the grant, and cannot be controlled or affected by subsequent statements or declarations of the vendor.

3. A grant of a tract of land containing the clause ''including all right, title, claim and interest in and to the waters of Seaman's creek and the irrigating ditches appurtenant thereto,'' carries with it all the waters and water rights that were appurtenant to the

particular tract of land conveyed at the time of the execution and delivery of the conveyance, and the determination as to the amount of water and the extent of the water right so conveyed must depend wholly upon the extent of the appurtenant rights at the time of the conveyance.

4. A decree in an action between D. and J., adjudicating the respective rights and priorities of the parties to the waters of a certain stream for the irrigation of their respective ranches then owned and occupied by them, is not *res adjudicata* or binding upon D. as to his right to use certain of the waters of the same stream upon another tract of land as appurtenant thereto, which is purchased and acquired by D. from a stranger to the action subsequent to the trial and decree in the action between D. and J.

5. A judgment and decree adjudicating rights and priorities to the use of the waters of a stream carries with it and adjudicates and decrees the rights and priorities to the waters of the tributaries to such stream above the respective places and points of diversion.

(Syllabus by the court.)

APPEAL from the District Court of the Fourth Judicial District for the County of Blaine. Hon. E. A. Walters, Judge.

Action by the plaintiff to obtain an adjudication and decree of his rights and priorities in and to the waters of Seaman's creek in Blaine county, and to quiet his title thereto. Judgment for plaintiff, and defendant appeals. *Reversed.*

Ensign & Ensign, and R. F. Buller, for Appellant.

Prior appropriation of all the water of a stream for irrigating purposes goes to the tributaries, and when this right once vests it must be protected and upheld. Rights cannot be acquired to the waters of springs situated along the channel of a stream and which constitutes a direct source of supply by entering on, cleaning out and thereby increasing the water supply, as against prior appropriators in good faith of all the waters of the stream. (*Malad Irr. Co. v. Campbell,* 2 Ida. 411, 18 Pac. 52; *Cole v. Richard's Irr. Co.,* 27 Utah, 205, 101 Am. St. Rep. 962, 75 Pac. 376; *Strickler v. Colorado Springs,* 16 Colo. 61, 25 Am. St. Rep. 245, 26 Pac. 313.)

The common-law rule that the owner of land is absolute owner of percolating waters does not apply in the arid regions

of the United States.    (*Katz v. Walkinshaw,* 141 Cal. 116, 99
Am. St. Rep. 35, 70 Pac. 663, 74 Pac. 766, 64 L. R. A. 236;
*Southern Cal. Inv. Co. v. Wilshire,* 144 Cal. 68, 77 Pac. 767.)

There was no privity whatever between Henry Riddle, as
owner of the lower tract, and John Galbraith or Mrs. John
Galbraith, as owner of the upper tract, and the Riddle water
right never was attached nor appurtenant to the Galbraith
land.    (*Chiatovich v. Davis,* 17 Nev. 133, 28 Pac. 239.)

When a vendor sells land in two parcels to different
vendees, they take the appurtenant water right, if there is
any, in proportion to the amount of water previously used
by the vendor on each.    (*Bloom v. West,* 3 Colo. App. 212,
32 Pac. 846.)

Where a written contract is clear and free from ambiguity,
parol evidence is inadmissible to vary its terms.    (*Liverpool
etc. Ins. Co. v. Richardson,* 11 Okl. 579, 69 Pac. 936; *Drumm-
Flato etc. Co. v. Barnard,* 66 Kan. 568, 72 Pac. 257; *Hale Bros.
v. Milliken,* 5 Cal. App. 344, 90 Pac. 365; *Jacob v. Lorenz,* 98
Cal. 332, 33 Pac. 119.)

The vesting of title is to be determined by the legal effect
of the terms of the grant in a deed, and cannot be controlled
by parol evidence.    (*Whitney v. Dewey,* 10 Ida. 633, 80 Pac.
117, 69 L. R. A. 572; *Riley v. North Star Min. Co.,* 152 Cal.
549, 93 Pac. 194; sec. 15, Rev. Stat. Ida.)

A judgment is conclusive between the parties, not only as
to such matters as were in fact determined in the proceeding,
but also as to every other matter which the parties might
have litigated as incident to, or necessarily connected with,
the subject matter of the litigation, whether the same, as a
matter of fact, were or were not considered.    (*Denver City
Irr. Co. v. Middaugh,* 12 Colo. 434, 13 Am. St. Rep. 234, 21
Pac. 565; *Spokane Valley Land & Water Co. v. Madson,* 46
Wash. 640, 91 Pac. 1; *Armijo v. Mt. Elec. Co.,* 11 N. M. 235,
67 Pac. 726; Freeman on Judgments, 3d ed., sec. 253.)

A lessee for years may sustain a suit for a perpetual in-
junction to prevent the diversion of water necessary for the
enjoyment of the land.    (*Heilbron v. Fowler Switch Canal
Co.,* 75 Cal. 426, 7 Am. St. Rep. 183, 17 Pac. 535.)

N. M. Ruick, and McFadden & Brodhead, for Respondent.

With the exception of Colorado, all the authorities hold that water rights are regarded as appurtenances to the land, and a deed of the land *per se* passes the water right, unless expressly reserved. (*Frank v. Hicks,* 4 Wyo. 502, 35 Pac. 475; *Cave v. Crafts,* 53 Cal. 135.) Some thirty cases from highest courts in the arid states in support of the above proposition are collected in a footnote on page 211, "Mills' Irrigation Manual, 1907."

Defendant having alleged in his cross-complaint that these springs are tributary to Seaman's creek, has the burden of proving that fact.

Unless these waters are shown to reach the creek in a well-defined channel, surface or subterranean, they cannot be considered tributary. Waters percolating generally through the soil beneath the surface are the property of the owner of the soil, but subterranean streams, flowing in natural channels between well-defined banks, are subject to appropriation under the same rule as surface streams. (*Howard v. Perrin,* 8 Ariz. 347, 76 Pac. 460; affirmed, 200 U. S. 71, 72, 21 Sup. Ct. 195, 50 L. ed. 374.)

One has a right to dig trenches upon his own land for a useful purpose, although percolating waters are thereby diverted from a spring from which others derived a water supply and from which a natural stream of water had flowed, where his trenches do not intercept any natural stream, either surface or subterranean. (*Southern Pac. Co. v. Dufour,* 95 Cal. 615, 30 Pac. 783, 19 L. R. A. 92.)

It is only water flowing in a stream that a right to the use thereof may be acquired by appropriation in this state. (Acts Ida. Territory, 11th Sess., 1881, p. 267.) This provision taken from the first territorial statute authorizing appropriation of water has been re-enacted many times and is still the law.

The question in the former action of *Daly v. Josslyn* was: What were the rights of the parties with respect to the use of certain waters when that action was commenced? (*Cave v. Crafts, supra.*)

The finding of the court that the waters of the spring "never were and are not tributary to" Seaman's creek renders unnecessary a finding that the waters of said spring were not adjudicated. (*Southern Pac. R. Co. v. Dufour, supra.*)

AILSHIE, C. J.—This action involves the right to the use of a certain portion of the waters of Seaman's creek in Blaine county. The principal facts upon which the case rests are as follows: Sometime about the year 1881, a man named Hank Riddle, and his wife, Jennie B. Riddle, located on a tract of unsurveyed public lands lying along the course of Seaman's creek, and which as then claimed comprised the lands now owned and occupied by both appellant and respondent. About the same time the next adjoining tract of land above that taken by Riddle was occupied and claimed by other settlers, and is and has been known and designated as the Cox-Kimbrough ranch. Riddle appropriated a part of the waters of Seaman's creek and diverted the same at a point just above the upper end of his ranch and used this water,—some in irrigating trees and some in raising his crops of alfalfa, vegetables and grain. Riddle died sometime prior to February 1, 1883. On the latter date his wife, Mrs. Riddle, gave notice of claim of water right from Seaman's creek "for the purpose of irrigating his ranch known as the Riddle ranch . . . . about one and one-half miles from Bellevue." Just here it should be remembered that at the time of giving this notice of claim to water right, the "Riddle ranch" was unsurveyed public lands, and as then claimed embraced the lands now owned and occupied by both the appellant and respondent, and adjoined the Cox-Kimbrough ranch on the west. Sometime during the year 1883 these lands were surveyed by the government, and it was thereupon discovered that the Riddle ranch embraced a great deal more land than could be claimed under one entry. The lower half of this tract on which the Riddle residence was situated was filed upon under either the homestead or pre-emption laws (and, for convenience, we will call it the homestead), and on June 16, 1883, Jennie B. Riddle filed on the upper

half under the timber culture law. Sometime thereafter Mrs. Riddle married John Galbraith, and on June 30, 1888, she filed a relinquishment of her timber culture, and immediately, and on the same day, her husband, John Galbraith, filed on the same and made final proof thereon July 1, 1889. On May 7, 1889, Mrs. Riddle received the patent for the homestead, which was the lower ranch. During this time the residence had been on the homestead, and it seems that most of the land which had been cultivated had been on that tract. On May 18, 1889, Mrs. Galbraith, and her husband, John Galbraith, executed and delivered a mortgage to the Lombard Investment Company for the sum of $1300, in which they described the lower Galbraith ranch, and in the description of which is found the following clause: "Including all right, title, claim and interest in and to the waters of Seaman's creek and the irrigating ditches appurtenant thereto." This mortgage was eventually foreclosed and the land sold at foreclosure sale and bid in by the Lombard Investment Company, and a deed was taken therefor describing the lands, water rights and appurtenances in the language of the mortgage. The appellant Daly is the purchaser of this land from the Lombard Investment Company, and consequently deraigns his title from the Galbraiths through the medium of this mortgage. In the meanwhile Galbraith died, and on July 25, 1892, Jennie B. Galbraith executed and delivered to W. J. Bowden a mortgage on the upper ranch or timber culture, and this mortgage was eventually foreclosed and a sale was made thereunder. The respondent Josslyn deraigns his title from Mrs. Galbraith through the medium of the Bowden mortgage. This latter mortgage contained no description of any water rights or appurtenances, and did not on its face purport to cover or convey any ditches or water rights.

Prior to December 17, 1891, Simpson Goble, Asa M. Kimbrough and Jennie B. Galbraith, were the appropriators, claimants and users of all the waters of Seaman's creek for irrigation purposes, and it seems that about that time a dispute arose between them relative to their respective rights

and priorities. Consequently, on the latter date, the three parties entered into an agreement in writing which recited their differences and a desire of the parties to settle the matters in dispute, and therein stipulated and agreed that the city of Bellevue should receive the quantity of 150 inches of water from Seaman's creek or Muldoon's gulch, as it is sometimes called, and that such right should be a prior and superior right to that of the respective parties, and that all the remaining waters of the stream should be equally divided among the three parties to the contract, and that the rights and priorities of the three contracting parties should be equal in all respects, and no one should be greater or superior to that of the other. Later a difference arose among the owners of these several tracts of land concerning the effect of this stipulation and agreement on Josslyn as purchaser of the Kimbrough ranch and water right. A lawsuit ensued which was eventually decided by this court in the case of *Daly v. Josslyn,* 7 Ida. 657, 65 Pac. 442. At that time, however, it should be borne in mind, neither Daly nor Josslyn owned any part of the Galbraith ranch; but all the waters that the Galbraiths were entitled to divert from Seaman's creek were being used and applied on one or both of these tracts of land, which had been commonly known as the Riddle or Galbraith ranch. After Daly became the owner of the lower Galbraith tract, or the homestead, he claimed that he was entitled to all of the waters of the stream that had been previously appropriated, diverted and used by the Galbraiths, and that he acquired this right under his deed and by virtue of the clause contained in the Lombard Investment Company's mortgage above quoted. Josslyn, on the other hand, claimed that he purchased the upper Galbraith ranch and that he became thereby entitled to one-half of the Galbraith water right and appropriation as an appurtenance to the upper ranch. Josslyn being farther up the stream than Daly, proceeded to carry into effect his view as to the rights he acquired by his purchase, and consequently diverted and used on this ranch a quantity of water equal to one-half of the Galbraith right and appropriation.

Daly disputed and denied this right, and thereupon Josslyn commenced his action praying for a decree adjudicating and quieting his title and right to one-half the Galbraith water right and appropriation, being one-sixth of the entire flow of Seaman's creek (exclusive of the Bellevue right) for his use in irrigating the tract of land formerly known as the upper Galbraith ranch. The issues were joined and the trial resulted in a decree and judgment in favor of the plaintiff as prayed for. Defendant appealed from the judgment and an order denying his motion for a new trial.

Appellant contends that under the clause contained in the Lombard Investment Company's mortgage, describing the property conveyed, and "including all right, title, claim and interest in and to the waters of Seaman's creek, and the irrigating ditches appurtenant thereto," there was thereby conveyed all of the water rights and appropriations that the Galbraiths owned on that creek. The respondent disputed and controverted that contention, and it seems that the trial court thought this recital in the mortgage was uncertain and indefinite, and for that reason permitted the plaintiff to introduce in evidence a mortgage executed by Mrs. Galbraith and her husband on October 7, 1889, covering the upper ranch (now owned by Josslyn), in which mortgage it was recited that "said premises are mortgaged with seventy-four inches of water of Seaman's creek, flowing through said lands, measured under a four-inch pressure, with appurtenances." This mortgage was introduced for the purpose of showing that Mrs. Galbraith had never intended to include in the Lombard Investment Company's mortgage all of the water rights and appropriations of which she was owner, but that she had merely intended to convey one-half of her water rights, and that at the time of making the mortgage of October 7, 1889, she thought she was still the owner of seventy-four inches of the waters of Seaman's creek. The appellant objected to the introduction of this evidence and assigns the same as error. There is no doubt but that its admission was erroneous. The admissions or declarations of a grantor with reference to his title made subsequent to his

parting with title can never be admissible against his grantee. This is a fundamental principle of evidence that is too well established to require discussion. (1 Ency. of Ev. 513-515; *Penrose v. Griffith,* 4 Binn. (Pa.) 231; *Grimes Dry Goods Co. v. Malcolm,* 58 Fed. 670, 7 C. C. A. 426; *Anonymous,* 34 Ala. 430, 73 Am. Dec. 461.)

"The vesting of title is determined by the legal effect of the terms of the grant, and cannot be controlled by parol evidence." (*Whitney v. Dewey,* 10 Ida. 633, 80 Pac. 1117, 69 L. R. A. 572.) While the introduction of this mortgage was not parol evidence, it rests upon the same principle in this case. It was wholly extraneous, and long subsequent to the previous grant to the Lombard Investment Company.

The decisive question upon which the final decision of this court must rest is that as to the water rights that were appurtenant to the lower Galbraith ranch at the date on which the Lombard Investment Company's mortgage was executed by Mrs. Galbraith and her husband. If all the waters and water rights in Seaman's creek of which they were owners at that time were then appurtenant to the tract now owned by appellant, it follows that appellant is now the owner thereof, and must prevail to the full extent of the Galbraith water rights and appropriations. On the other hand, if any part or portion of that water right and appropriation was, at the time of the execution of the Lombard Investment Company's mortgage, appurtenant to the upper ranch now owned by respondent, then respondent must succeed to that extent and to that extent only. As to the inquiry as to when waters and water rights become appurtenant to a tract of land the question is well settled by the constitution and statute and authorities. (Sec. 4, art. 5, Const.; *Hard v. Boise City Irr. etc. Co.,* 9 Ida. 600, 76 Pac. 331, 65 L. R. A. 407; *Clyne v. Benicia Water Co.,* 100 Cal. 310, 34 Pac. 714; *Frank v. Hicks,* 4 Wyo. 502, 35 Pac. 483; *Cave v. Crafts,* 53 Cal. 135.) The trial court did not make a finding on this specific point, which is the pivotal point in the case. There is some conflict in the evidence as to just the time at which water was applied to the upper ranch

and to the lower ranch, and the amount and volume of water that was used on each ranch. For this reason, it will be necessary for the trial court, who saw and heard the witnesses, to make findings, and we are inclined to think it would be better to have the case retried as to that issue.

We are satisfied that at the time of the appropriation of the waters of Seaman's creek by the Riddles, the appropriation was made for the whole of the "Riddle ranch," which then comprised what now constitutes the lands owned by both appellant and respondent. It therefore follows that so far as the appropriation was concerned, the water became as much appurtenant to one tract as the other. Subsequently, however, to the appropriation, the government survey was made and what had been formerly known as the "Riddle ranch" became divided into two farms, one the Riddle homestead, and the other the Riddle timber culture. The inquiry, therefore, as to the particular lands to which this water was appurtenant must turn upon the use and application of the water as the same existed at the time the Lombard Investment Company's mortgage was executed.

The defendant pleaded as a defense to the plaintiff's action the judgment in the case of *Daly v. Josslyn,* 7 Ida. 657, 65 Pac. 442, and alleged that at the time of the commencement and trial of that action, Josslyn; who was then the owner of the Cox-Kimbrough ranch and the successor in interest of the Kimbrough water rights, was also at that time the lessee of the upper Galbraith ranch, of which he is now the owner, and that by reason of those facts plaintiff is and was bound by the judgment in the case of *Daly v. Josslyn.* It is contended by appellant that Josslyn, being the tenant on the Galbraith ranch and in possession thereof, could have litigated the question as to whether that ranch was entitled to any water rights and privileges out of Seaman's creek, and that having failed to do so, he is precluded from raising the question in any other action or proceeding or further litigating the same. In support of this position counsel cites the following authorities: *Heilbron v. Fowler Switch Canal Co.,* 75 Cal. 426, 7 Am. St. Rep. 183, 17 Pac.

535; *Denver City Irr. Co. v. Middaugh,* 12 Colo. 434, 13 Am. St. Rep. 234, 21 Pac. 565; Freeman on Judgments, sec. 253. We do not think, however, that the authorities go to this extent or bear out or support appellant's contention as made under the facts in this particular case. In fact, *Heilbron v. Fowler* indicates that Daly could not have been bound in that suit beyond the terms of the leasehold. It may be that Josslyn having been a party to the case of *Daly v. Josslyn,* would be bound as the tenant in possession of the Galbraith ranch by the judgment entered in that case, and it is possible that during his tenancy he would not have been permitted as tenant to have raised this question or have further litigated any rights he might have had either individually or as tenant of the Galbraith ranch; but the title and possession that Josslyn now holds is not as tenant but as owner of the fee. He has acquired his title from a total stranger to the action of *Daly v. Josslyn,* and certainly cannot be precluded by that judgment from litigating any water right that might have been appurtenant to the lands he subsequently purchased.

Appellant further excepts and makes objection to paragraphs 1 and 2 of the second division of the court's findings which have special reference to the waters of a spring situated about 775 yards easterly from plaintiff's residence, and of a lake or pond located on the old Cox-Kimbrough ranch. The spring appears to flow about 25 inches of water and the lake, which is fed by springs, furnishes water sufficient to irrigate 20 acres. This spring, and also the lake, are situated within the gulch or valley through which Seaman's creek flows, and are admittedly, to some extent, tributaries and feeders to Seaman's creek. In other words, the waters from these springs, if allowed to flow in an open channel uninterruptedly, will find their way into Seaman's creek. Respondent claims, however, that originally no waters ever reached the stream from this first spring, but that, on the contrary, it had no definite channel or outlet, and that it simply spread out, forming a wet, marshy place for a short distance and then entirely disappeared; that none of

the water therefrom ever reached the stream; that he opened up and developed this spring, and that from time to time it produced a greater flow of water until it reached its present capacity of 25 inches, and that he has used the same for irrigating his lands, and that he is entitled thereto for the reason that it is not properly a tributary to Seaman's creek, and that the waters thereof were not covered or adjudicated by the decree in *Daly v. Josslyn.* Respondent makes substantially the same contention with reference to the waters of the lake or pond. He admits, however, that in the natural state and condition of this lake, a small quantity of the water would reach the creek. The court, however, found that the spring is not tributary to Seaman's creek, and that the decree in *Daly v. Josslyn* did not cover or adjudicate any of the waters of the spring, and that all the waters used by respondent from the lake flow back into the stream, and do not in any respect lessen or diminish the flow in the creek, and accordingly decreed that respondent is and was entitled to the waters from both the spring and lake. The only question of serious importance that occurs to us in this connection is as to whether or not this spring and lake are tributary to Seaman's creek. If they are, then the waters thereof were covered by the agreement of December 17, 1891, and the decree in the case of *Daly v. Josslyn,* *supra.* (*Malad Irr. Co. v. Campbell,* 2 Ida. 411, 18 Pac. 52; *Cole v. Richards Irr. Co.,* 27 Utah, 205, 101 Am. St. Rep. 962, 75 Pac. 376; *Katz v. Walkinshaw,* 141 Cal. 116, 99 Am. St. Rep. 35, 70 Pac. 663, 74 Pac. 766, 64 L. R. A. 236.) If they are not tributary to that stream, then the findings and decree of the court in that respect are correct. Since the case must be retried on the issue as to the waters and water right appurtenant to the Galbraith ranch now owned by Daly, we think it best to also order a new trial as to the volume and flow of water from this spring and lake, and also on the issue as to whether these are in fact tributary and feeders to the waters of Seaman's creek. In this connection, we think it well enough to call attention to the fact that if these springs are in the gulch or valley through which

Seaman's creek flows, and toward which their waters would naturally percolate and flow, then they must be in a sense and measure tributary to the stream; and the only further question that can arise is as to the amount of water that could reach the main stream from these springs or sources of supply. It seems self-evident that to divert water from a stream or its supplies or tributaries must in a large measure diminish the volume of water in the main stream, and where an appropriator seeks to divert water on the grounds that it does not diminish the volume in the main stream or prejudice a prior appropriator, he should, as we observed in *Moe v. Harger*, 10 Ida. 305, 77 Pac. 645, produce "clear and convincing evidence showing that the prior appropriator would not be injured or affected by the diversion." The burden is on him to show such facts. In this case there can be no reasonable doubt but that the appellant is entitled to have at least the volume of water flow from these springs into Seaman's creek as great and to as full an extent as it was at the time the decree was entered in *Daly v. Josslyn,* provided these springs flow that much water at this time.

The judgment of the lower court is reversed, and a new trial is granted,—first, to determine the quantity of water and extent of the water right that was appurtenant to the lower Galbraith ranch now owned by Daly, at the time of the execution of the Lombard Investment Company's mortgage; second, to determine the issue whether the spring and lake mentioned and described in the pleadings are tributaries to Seaman's creek, and, if so, the extent to which the waters from those sources of supply reached the main stream at the time and prior to the decree in *Daly v. Josslyn,* 7 Ida. 657, 65 Pac. 442. In other respects, the court will proceed in accordance with the views herein expressed. Judgment reversed and a new trial granted. Costs awarded in favor of appellant.

Sullivan, J., and Stewart, J., concur.