(May 8, 1909.)

JOHN P. HUTCHINSON, Respondent, v. WATSON SLOUGH DITCH CO., LTD., a Corporation et al., Appellants.

[101 Pac. 1059.]

NATURAL WATERCOURSE—RIGHT OF APPROPRIATOR TO CARRY WATER IN CHANNEL OF WATERCOURSE—PRIORITY OF APPROPRIATION—RIPARIAN RIGHTS—RIGHT TO INTERFERE WITH FLOW OF STREAM.

1. Evidence in this case examined and held sufficient to sustain the finding that Watson slough, in Bingham county, is a natural watercourse.

2. A showing by a riparian proprietor that he has been for more than seventeen years using the water of a stream for "domestic, culinary and household purposes and for the use of his livestock," and that the water of the stream has continuously flowed through his land, "moistening the same," does not amount to an appropriation of any of the water of the stream within the meaning of the constitution and statute of this state. The waters of this state are subject to appropriation and diversion in the manner prescribed by the constitution and statute, and priority of appropriation gives the better right to the use of such waters as. between the appropriator and every other person, even though he be a riparian owner.

3. The common-law doctrine of riparian rights, in so far as those rights conflict with the right of an appropriator of the waters of a stream, is repugnant to, and in conflict with, the constitution and statutes of this state, and to that extent has been abrogated thereby.

4. Riparian rights exist in the state of Idaho only to the extent that they do not come in conflict with the superior and paramount right of one who has appropriated the waters for a beneficial use in conformity with the constitution and statutes of the state.

5. The rights of a riparian proprietor exist and may be maintained as against a stranger who does not claim or assert his

right to interfere with or disturb the waters of a natural stream by or on account of an appropriation to a beneficial use. In such case the rights of a riparian proprietor are superior and paramount to the rights of a stranger or intermeddler who does not assert or establish any right to the use of the water by appropriation.

6. A riparian owner's right to use the water of a stream for domestic and culinary purposes and watering his stock, and to have the water flow by or through his riparian premises, is such a right as the law recognizes as inferior to a right acquired by appropriation and superior to any right of a stranger to or intermeddler with the waters of such stream.

7. At such times as an appropriator is not using the water under his appropriation, and is not applying the water to a beneficial use, such water must be considered and treated as unappropriated public water of the state, and for such period of time is subject to appropriation and use by others.

8. When an appropriator is not using water under his appropriation and during the season not covered by his appropriation, he must allow the water to flow down the bed of the natural channel.

(Syllabus by the court.)

APPEAL from the District Court of the Sixth Judicial District, for the County of Bingham.   Hon. J. M. Stevens, Judge.

An action by the plaintiff to enjoin and restrain defendants from shutting off and interfering with the flow of the stream at Watson slough, in Bingham county. Judgment for plaintiff and defendants appeal. Judgment modified, and, as modified, affirmed.

Hansbrough & Gagon, for Appellants.

A slough which carries no water except the overflow waters of a river in times of flood, which as compared with the volume of water in the river is insignificant, and which has no original water of its own, but is simply a conduit by which occasionally some of the flood water escapes into the lower lands, is not a watercourse. (*Lamb v. Reclamation Dist.*, 73 Cal. 125-135, 2 Am. St. 775, 14 Pac. 625; *Singleton v. Atchison T. & S. F. Ry. Co.*, 67 Kan. 284, 72 Pac. 786; *Park v. Boulware,* 7 Ida. 490, 63 Pac. 1045.)

John W. Jones, for Respondent.

Where water has been for many years accustomed to flow in certain well-defined and existing channels only at stated periods of each year, the same constitute natural watercourses and are governed by the rules applicable thereto. (*Huffner v. Sawday,* 153 Cal. 86, 94 Pac. 424, and cases cited; *Gibbs v. Williams,* 25 Kan. 214, 37 Am. Rep. 241; *Simmons v. Winters,* 21 Or. 35, 28 Am. St. 727, 27 Pac. 7, and cases therein cited.)

AILSHIE, J.—This action involves the right of the appellants to shut off the waters of a stream or body of water called Watson slough, in Bingham county, and to prevent the waters flowing down the stream in the natural channel. Watson slough appears to be a natural channel diverting the waters of Snake river from the main stream at a point on the west side of the river about two and one-half miles southwest from Blackfoot, in Bingham county, and flowing thence in a southwesterly direction for a distance of about eight miles and then emptying back into the Snake river. This slough or stream flows through respondent's lands. About the year 1885, a man named Watson duly and regularly made an appropriation of a large volume of the waters of Snake river for the irrigation of agricultural lands. This appropriation was made at the head of Watson slough. The water to be diverted from the Snake river through Watson slough and carried down through the main channel of Watson slough for several miles and on past the premises now occupied by respondent, and thereafter diverted from the Watson slough by means of a canal through which the waters were carried and distributed to the several tracts of land to be irrigated. Watson made some slight improvements in the way of lowering the bed of the channel and removing sand and gravel bars, and also constructed a small wing dam in the Snake river in order to divert a larger volume of water into Watson slough than had formerly been flowing through that channel. Watson and his successors in interest,

the appellants herein, have continuously, during the irriga-
tion season, diverted and used the waters of Snake river in
the manner above designated since the year 1885. The ap-
propriation and use seem to have been purely for irrigation
purposes on agricultural lands. About the year 1891 the
respondent established his residence on and acquired title
to a tract of land through which Watson slough runs, and
alleges that the slough is a natural stream and watercourse
and that he is a riparian proprietor thereon. He also alleges
that he has for more than seventeen years last past been
using the waters naturally flowing in the stream and water-
course for domestic purposes and for watering his livestock,
and that as a riparian owner he is entitled to the continued
use thereof, and to have the water flow through his lands in
its natural course when not used for irrigation and other
purposes by prior appropriators in conformity with law.
The defendants and appellants deny that the Watson slough
is a natural watercourse, but allege, on the contrary, that it
is merely a high water channel, and that in its natural state
it only carried water during the high water season, and that
during the rest of the year it was dry, and they and their
predecessors in interest acquired and appropriated the same
for canal purposes and enlarged and repaired the same so
that it would carry a large volume of water, and that the
same is their private property. It was alleged by plaintiff
and admitted by the defendants that after the irrigation
season, and about October 15, 1907, the appellants shut down
their headgate at the head of the slough and also placed
therein a dam of earth and rock so as to prevent the water
from flowing down the channel through Watson slough, and
diverted and deflected the whole body of the stream into
the main channel of Snake river, and thereby cut off the
flow of water in Watson slough and deprived the respondent
of the privilege of using the water for any purpose.

When the case was called for trial, a jury was impaneled
and special interrogatories were submitted to them. These
interrogatories were specifically directed to the character of
the Watson slough,—as to whether or not it was a natural

watercourse or merely a high-water channel for overflow waters of Snake river. The court gave certain instructions to the jury, and, among other things, instructed them as to what constitutes a natural stream or watercourse as defined by law. Both appellants and respondent agree that the court gave the correct definition of a watercourse, and for that reason we quote it here. The court said:

"The jury is instructed that a watercourse is a stream of water flowing in a definite channel, having a bed and sides or banks, and discharging itself into some other stream or body of water. The flow of water need not be constant, but must be more than mere surface drainage occasioned by extraordinary causes; there must be substantial indications of the existence of a stream, which is ordinarily a moving body of water."

The jury answered the interrogatories in favor of the contention that Watson slough was and is a natural watercourse. The court adopted the findings of the jury and made additional findings in accordance therewith. The court, among other things, found that:

"Watson slough is now and at all times herein mentioned and from time immemorial has been a natural watercourse, diverting water from the Snake river, on the west side thereof, about two and one-half miles southwest of Blackfoot, in Bingham county, Idaho, and flowing through the said described land of the plaintiff, and on in a general southwesterly direction, emptying its waters into the said Snake river, the said watercourse being about seven or eight miles in length."

There was a sharp conflict in the evidence as to the natural character of Watson slough,—as to whether or not it had always carried a stream of water or whether it was dry during certain seasons of the year. It must be conceded, however, that much of the evidence sustains the contention that it is a natural watercourse and has from time immemorial carried a constant stream of water. The court found in favor of this contention. It being conceded by both parties that the court entertained the correct view of the law as to

what constitutes a watercourse, it necessarily follows that the court, in arriving at his conclusions of fact, necessarily did so in view and understanding of the correct principle of law. The presumption is strongly in favor of the correctness of the court's finding of fact on that question. Under the well-established rule with reference to findings based on conflicting evidence, we must sustain the finding on this proposition. We must base our further consideration of this case upon the theory that we are dealing with a natural stream and watercourse.

In the further discussion of the case, it must be remembered that the respondent has not alleged or established any appropriation or diversion of the waters of this stream for any useful or beneficial purpose. He makes no claim to the water by reason of any appropriation or diversion in accordance with the statute, but rather bases and asserts his right on the fact that he is a riparian proprietor, and that as such he has for more than seventeen years been using the water for "domestic, culinary and household purposes and for the use of his livestock," and that the waters of the stream have continuously flowed through his lands "moistening the same." Whatever rights, therefore, respondent has established, are wholly dependent upon his proprietary rights as a riparian owner of lands through which this stream flows. It must also be noted that the claim respondent has asserted is not adverse to or in conflict with appellants' appropriation or right of diversion. Appellants' appropriation is for irrigation purposes. The cause of respondent's complaint is not that appellants are diverting and using the waters under their appropriation, but, on the contrary, that when they are not diverting and using the water under their appropriation for irrigation purposes, they are cutting off the natural supply of the stream and preventing the water of the stream from flowing down the channel thereof in its natural course. This is not a contest between two appropriators of water, because neither party either asserts or establishes any right or claim to the water by reason of appropriation or use at the time and for the period involved in this action. The

appellants claim, however, that by reason of this appropriation and their rights in this channel to carry and convey its water, they have the resultant right to shut down the headgate at the head or intake of the slough, and thereby prevent the water flowing down the slough and divert and deflect it into the main channel of Snake river at any time they may see fit so to do.

It is well established in this state, and needs for its support no argument or citation of authority, that the waters of the state are subject to appropriation and diversion in the manner prescribed by law, and that priority of appropriation gives the better right to the use of such waters as between the appropriator and a riparian owner. Sec. 3 of art. 15 of the constitution provides:

"The right to divert and appropriate the unappropriated waters of any natural stream to beneficial uses shall never be denied. Priority of appropriation shall give the better right as between those using the water. . . . ."

This constitutional provision was simply an enactment into the organic law of the state of a rule that had been enacted by the territorial legislature and recognized by the courts of the territory. The question of conflicting rights arising between an appropriator and a riparian proprietor was considered and passed upon by the territorial supreme court in *Drake v. Earhart,* 2 Ida. 750, 23 Pac. 541, subsequent to the adoption of the constitution and immediately prior to the admission of the state. The court there held that the claim of a riparian proprietor to the use of water of a stream flowing through his land, which is not based upon appropriation under the territorial laws, is inferior to that of a prior appropriator of the waters of such stream. The court in that case seems to have been very careful not to hold that a riparian proprietor had no rights, as such, at all, but rather that his rights as a riparian proprietor, whatever they might be, were inferior to the rights of an appropriator of the waters. That rule has been uniformly recognized by the courts of the state ever since. The legislation of the state, even from the early territorial days, down to the present,

has been framed upon that theory and principle. The common-law doctrine has not only been abrogated in this state in this respect, but it has been likewise abandoned in many other states of the arid and semi-arid sections of this western country. (*Arizona Copper Co. v. Gillespie* (Ariz.), 100 Pac. 465; *Cole v. Richards Irr. Co.*, 27 Utah, 205, 101 Am. St. 962, 75 Pac. 376; *Walsh v. Wallace*, 26 Nev. 299, 99 Am. St. 692, 67 Pac. 914; *Hammond v. Rose*, 11 Colo. 526, 7 Am. St. 258, 19 Pac. 466; *Albuquerque etc. Irr. Co. v. Gutierrez*, 10 N. M. 177, 61 Pac. 357; *Nevada Ditch Co. v. Bennett*, 30 Or. 59, 60 Am. St. 777, 45 Pac. 472; Long on Irrigation, sec. 6; Wiel on Water Rights, secs. 18, 19. See, also, *Lux v. Haggin*, 69 Cal. 255, 10 Pac. 674; *United States v. Rio Grande Dam & Irr. Co.*, 194 U. S. 690, 19 Sup. Ct. 770, 43 L. ed. 1136.)

A riparian proprietor in the state of Idaho has no right in or claim to the waters of a stream flowing by or through his lands that he can successfully assert as being prior or superior to the rights and claims of one who has appropriated or diverted the water of the stream and is applying it to a beneficial use. To this extent, therefore, the common-law doctrine of riparian rights is in conflict with the constitution and statutes of this state and has been abrogated thereby.

Another question, however, must be considered in this case, for the reason that although the appellants are appropriators of the water of this stream, and, indeed, of the entire volume thereof, still their point of diversion from Watson slough is at a point down the stream below respondent, and they are accustomed to carry the water by and through respondent's lands. It is also true that their water appropriation is from Snake river at the head of the slough. When they are not using the water, and during the non-irrigation season, the water naturally flows down the channel of the stream through and by respondent's land. Appellants shut off the waters at their headgate at the head of this slough after the close of the irrigation season and during the period of time and season not covered by their appropriation, and during which they were not applying the water to any

useful or beneficial purpose. Appellants were, therefore, during this period of time, and in reference to this stream, in the same position as if they had no appropriation whatever. For that period the water is to be treated the same as if unappropriated water of the state. Appellants were for the time as strangers and intermeddlers with the waters of this natural stream and watercourse. When they were not needing it or using it for carrying out or fulfilling the purposes of their appropriation, they were not content to allow it to flow in the natural channel of the stream where any and all might freely use it or acquire rights by appropriation and diversion, but they entirely cut off the source of supply and diverted it into another stream so that it could not flow in its natural channel and thereby supply riparian proprietors. This case must therefore be considered independently of the question of appropriation and diversion. It must be considered, so far as the question here involved is concerned, that the appellants are in the same position in reference to the acts and time involved as if they had no appropriation at all. The respondent is also without any appropriation or diversion. The question then arises under this state of facts as to whether or not the riparian proprietor has any such rights as he can assert against an entire stranger to and intermeddler with the waters of the stream for the period of time covered and involved in this action. The query arises: Is there anything in the constitution of this state contrary or repugnant to the assertion by respondent of his riparian rights as against one who attempts to shut off the source of supply of the stream and who does not found his right to do so upon his appropriation of such waters to a beneficial use? Sec. 18 of the Rev. Codes of this state is as follows:

"The common law of England, so far as it is not repugnant to, or inconsistent with, the constitution or laws of the United States, in all cases not provided for in these Rev. Codes, is the rule of decision in all courts of this state."

As we have before seen, the common-law doctrine of riparian proprietorship, whenever it comes in conflict with a water right acquired by appropriation, is at once in conflict with and repugnant to both the constitution and statutes of this state. We are unable to find, however, any particular wherein it would be repugnant to any provision either of the organic or statutory law of the state where it does not come in conflict with a right acquired by appropriation in conformity with law. This court has on several occasions recognized some of the incidental common-law rights of riparian ownership in cases where those rights do not come in conflict with the rights of appropriators. This was the case in *Small v. Harrington,* 10 Ida. 499, 79 Pac. 461, and *Powell v. Springston Lumber Co.,* 12 Ida. 723, 88 Pac. 97, wherein we recognized and sustained the rights of riparian proprietors to employ such means as might be necessary to obtain ingress and egress to and from the waters of navigable streams.

In *Shephard v. Coeur d'Alene Lumber Co., ante,* p. 293, 101 Pac. 591, decided at the March (1909) term of this court, it was held that "The right of ingress and egress to and from the lands of a riparian owner is a property right, and must be respected, and for the protection of which the courts will afford a remedy."

Sight should not be lost of the correct principle involved in such cases, namely, that a riparian owner, as such, acquires no right to the waters flowing by or through his lands that is prior or superior to that of a locator, appropriator and user of such waters. In other words, there is no such thing in this state as a riparian right to the use of waters as against an appropriator and user of such waters who has pursued the constitutional and statutory method in acquiring his water right. In order to acquire a prior or superior right to the use of such water, it is as essential that a riparian owner locate or appropriate the waters and divert the same as it is for any other user of water to do so. But a riparian owner still retains such right to have the waters flow in the natural stream through or by his prem-

ises which he may protect in the courts as against persons interfering with the natural flow or who attempt to divert or cut off the same wrongfully and arbitrarily and without doing so under any right of location, appropriation, diversion or use, and who do not rest their right to do so upon any right of use or appropriation. In other words, a stranger to the use and right of use of such waters for the time being cannot interfere, and if he does, the riparian owner has his remedy to restrain and enjoin such interference. The riparian owner's right to use the water for domestic and culinary purposes and watering his stock, and to have the water flow by or through his premises is such a right as the law recognizes as inferior to a right acquired by appropriation, but superior to any right of a stranger, intermeddler or interloper. While appellants have acquired by location and appropriation the right to carry and convey waters through this slough and natural stream and waterway to the full capacity of the stream for irrigation purposes, and for those purposes may control the stream in so far as it is necessary to keep the same open and in repair, and protected from breaks and damages, still they have no right to entirely divert the water from the stream and turn it to waste down another stream or into another channel at such times as they are not using the water or exercising their rights under their appropriation. They cannot waste the water and divert it from respondent simply because they cannot use it themselves. When they cannot, or will not use it, they must allow it to flow in its natural channel, undisturbed, for the use of any other persons who may have a subsequent or inferior right to appellants', or who may desire to acquire such right by appropriation or use. The fact they have acquired an easement in and right of way through this stream and public highway does not make them the sole and exclusive private owners thereof, or authorize them to obstruct that highway so that it cannot be used in like manner by other persons. A natural and navigable stream is a highway, and to cut off the supply of water flowing therein is as effectual an obstruction of the

highway as it would be to build a barrier across the same or to plow up or obstruct a public road. When you take the water out of the stream you take the bottom out of such highway. That can only be done in this state by an appropriator of waters when acting under and by authority of law in the exercise of his right of appropriation and beneficial use of the water. When the appropriator is no longer using the water either for the season or any specific time, his right to cut off or interfere with the flow of the stream for the time being lapses.

The decree in this case adjudges the appellants to have only such right in and to the use of Watson slough as is necessary and essential to carry the water for their appropriation from the head of the slough to the point of diversion and thence into their canal. It further adjudges and decrees that the appellants shall not shut off or divert the water at the headgate at the upper end of the slough at any time or for any purpose except upon application to the court for such times as may be absolutely necessary for cleaning out and repairing the channel of the slough in order to keep it in such condition that it will carry the water required by appellants' appropriation. There can be no doubt of the right of appellants to employ such means as may be necessary and essential to keep this channel clear and in repair for the purpose of carrying and conveying the necessary body of water to meet the demands of their appropriation. This right, however, must be exercised with due diligence and with proper respect for the rights of other appropriators, and also of riparian proprietors as indicated in this opinion. They may not arbitrarily and without cause shut off and divert the flow of the stream. Both the evidence and findings in this case indicate that the water was shut off on October 15, 1907, and that it remained so until the commencement of this action on December 21st. This appears to have been an arbitrary action on the part of appellants, and not necessary or essential for the doing of work or making repairs on or along the channel of the stream. Work under such circumstances necessitating the

diversion of the entire flow of a stream into another channel must of necessity be prosecuted rapidly and with care and diligence. For the failure to do so, appellants are responsible in the proper proceeding. The decree in this case requires appellants to apply to the court at any time it may be necessary to shut off the water temporarily for the purpose of improvement or repair. We think it better to so modify the decree as to make the injunction perpetual, excepting for such reasonable times and under such extraordinary conditions as may make it necessary or essential that the water be shut off for the purpose of cleaning out the channel of the stream or making necessary repairs or doing construction work essential in carrying out the diversion and appropriation of the waters for the purposes to which appellants are applying them. The necessity and occasion for such work should be primarily left to the appropriators who are conveying water through this channel, and for an abuse of the exercise of this right, they must be held liable by the court, and to that end the court will at any time inquire into the facts to ascertain and find out if they have acted wrongfully or arbitrarily. In all other respects the judgment will be affirmed. The judgment is reversed as to the particulars hereinbefore designated, and the cause is remanded, with directions to the trial court to enter an amended and modified judgment and decree in conformity with the views herein expressed. The total costs of this appeal will be equally divided between the appellants and respondent.

Sullivan, C. J., and Stewart, J., concur.