(June 30, 1897.)

# DUNBAR v. BOARD OF COMMISSIONERS OF CANYON COUNTY.

[49 Pac. 409.]

DEMURRER—MAY BE AMENDED.—A demurrer may be amended, but leave to do so should first be obtained. The building of a bridge is not an ordinary and necessary expense.

COUNTY COMMISSIONERS—AUTHORITY OF AS TO CREATING INDEBTED-NESS.—County commissioners have no authority to contract for the building of a bridge, the cost of which will exceed $1,000, without a petition asking it is presented to them, signed by at least one-third of the tax-paying voters of the county, and then, if the cost, added to the other ordinary and necessary expenses, will exceed the county's revenue for the year, the commissioners cannot contract for such bridge, without being authorized by a two-thirds vote, at an election called and held for that purpose, as provided by section 3, article 8, of the constitution.

WHAT PROVISIONS OF CONSTITUTION ARE MANDATORY.—The provisions of the constitution relative to the creation of public debts are mandatory. Boards of commissioners in creating debts must keep within the provisions of the constitution, and if they fail to comply with the requirements of the constitution, their acts are void.

TAXPAYER MAY SUE TO ENJOIN.—A taxpayer resident of a county may sue to enjoin the issuance of funding bonds which are about to be issued for debts contracted in violation of provisions of the constitution.

CONSTITUTION MUST BE OBEYED.—To uphold the validity of a proposed issue of county bonds, it must affirmatively appear by the record that the provisions of the constitution were complied with by the commissioners in creating the debt or debts about to be funded.

(Syllabus by the court.)

APPEAL from District Court, Canyon County.

Charles H. Reed, for Appellant.

This action was brought in the district court of Canyon county, Idaho, by the plaintiff, who was a citizen and taxpayer of said county, for the purpose of enjoining the defendants from issuing the negotiable coupon bonds of said county for the purpose of taking up and paying certain warrants, which it is claimed are illegal. That the sale of said bonds and the application and appropriation of the proceeds thereof for the

purpose aforesaid will be illegal, unauthorized by the act of the legislature of the state of Idaho, and in violation of the constitution of said state, and injurious to the financial credit of said county and to the interests of this plaintiff as a citizen and taxpayer of said county, and to the interests of all other taxpayers and citizens thereof. The three items for bridges and all the warrants issued for rabbit scalps do not belong to the "ordinary and necessary expenses" of Canyon county, authorized by the general laws of the state within the purview of article 3, section 3, constitution of the state, having been issued without a previous vote of the people, are void. (*Bannock County v. Bunting,* 4 Idaho, 156, 37 Pac. 277; *County of Ada v. Bullen Bridge Co.,* ante, p. 79, 47 Pac. 818.) That the plaintiff may maintain this action is supported by Dillon on Municipal Corporations, second edition, sections 731-734. (*Andrews v. Pratt,* 44 Cal. 309; *Catron v. Board of Commrs.,* 5 N. Mex. 203, 21 Pac. 60; *Crampton v. Zabriskie,* 101 U. S. 601; *Shakespear v. Smith,* 77 Cal. 638, 11 Am. St. Rep. 327, 20 Pac. 294; *Osterhout v. Rigney,* 98 N. Y. 22; *Colburn v. Mayor,* 17 Am. Law Reg. 191; *Littler v. Jayne,* 124 Ill. 123, 132, 16 N. E. 374; *Bayle v. City of New Orleans,* 23 Fed. 843.)

Attorney General R. E. McFarland, Fremont Wood and Edgar Wilson, for Respondents.

The act of the commissioners of Canyon county, respondents, cannot now be attacked, for the reason that the only remedy provided for by law was by an appeal from the decision of the board and the time for an appeal has long since expired and had expired prior to the commencement of this action. (See Rev. Stats., secs. 1776, 1777.) The court had no jurisdiction to entertain this suit in equity, for the reason that the plaintiff, and all parties interested, had a plain, speedy, and adequate remedy at law, in the form of an appeal from the action of the board in accordance with said section. When such a remedy is provided by law, the plaintiff has no standing in a court of equity. The court has no jurisdiction of the case. (*Picotte v. Watt,* 3 Idaho, 447, 31 Pac. 805; *Rogers v. Hayes,* 3 Idaho, 597, 32 Pac. 259.) In the former

case, decided by this court December 26, 1892, the court uses this language: "The statutory remedy being complete and adequate, the plaintiff must resort to it; and having shown no reason for not doing so, arising from any act of defendants, he is precluded from invoking the aid of equity." (*Morgan v. Board of Commrs.*, 4 Idaho, 418, 39 .Pac. 1119. See, also, *County of Ada v. Bullen Bridge Co.*, ante, p. 188, 47 Pac. 825; *Wilkerson v. Walters,* 1 Idaho, 564; *Hazard v. Cole,* 1 Idaho, 301.)

QUARLES, J.—The appellant, a resident taxpayer of Canyon county, commenced this action in the district court of the third judicial district of Idaho, in and for Canyon county, on the twenty-fifth day of April, 1896, to obtain a perpetual injunction restraining the defendant board of commissioners from issuing bonds to fund $46,445.20 of alleged indebtedness of said county incurred during the years of 1894 and 1895. On the May 5, 1896, C. M. Hays, district attorney for said district, filed a general demurrer to the complaint; averring that "the complaint does not state facts sufficient to constitute a cause of action." Thereafter, and on September 30, 1896, said district attorney filed, without leave of court, so far as is shown by the record, another demurrer to said complaint, alleging the following grounds: "1. That the complaint does not state facts sufficient to constitute a cause of action; 2. That several causes of action have been improperly joined in this, to wit: First, that the complaint seeks, in one action, without separating the various causes of action, to enjoin the issuing of bonds to pay the current and necessary expense warrants of said county; second, to pay scalp fund warrants; third, to pay road-fund warrants. 3. That the complaint is ambiguous, unintelligible, and uncertain, in this: From the complaint it cannot be determined whether the plaintiff brings this action to enjoin the issuing of bonds to pay current and necessary expense warrants, to pay scalp fund warrants, or road fund warrants, of said county. 4. That the complaint does not state a cause of action as to why the scalp fund warrants are illegal and void." Afterward the following order was made, to wit:

"This cause coming on to be heard regularly this twenty-third day of December, 1896, upon the demurrer to the complaint herein, it is ordered that the demurrer herein be, and is hereby, sustained.

(Signed)          "J. H. RICHARDS,

"Judge."

And the said order, and a judgment dismissing the action, were filed and entered in the cause on the thirtieth day of December, 1896.

We are unable to ascertain from the record upon which of the demurrers the court acted, or on what grounds the complaint was held to be bad. A demurrer, like any other pleading, may be amended; but, if amended, it should show on its face that it is an amended demurrer. We think that leave to file an amended demurrer should be first obtained, but, as to a first amendment prior to a hearing on demurrer, the leave should be granted as a "matter of course." The practice of filing a number of demurrers to the same pleading by the same party is not permissible, nor is the court called upon to look through the files to see how many demurrers have been filed. Without attempting to solve the question as to which demurrer was argued, or on what grounds the demurrer was sustained, we express the opinion that the plaintiff stated a cause of action, and that the order sustaining the demurrer and the judgment were erroneous.

Section 3, article 8, of the constitution, is in words as follows: "No county, city, town, township, board of education, or school district, or other subdivision of the state, shall incur any indebtedness, or liability in any manner, or for any purpose, exceeding in that year, the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof, voting at an election to be held for that purpose, nor unless, before or at the time of incurring such indebtedness, provision shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof, within twenty years from the time of contracting the same. Any indebtedness or liabil-

ity incurred contrary to this provision shall be void: provided, that this section shall not be construed to apply to the ordinary and necessary expenses authorized by the general laws of the state." Paragraph 12 of the complaint is as follows: "The plaintiff alleges further that the said board of county commissioners have made no provision for the collection of an annual tax sufficient to pay the interest on the proposed bonded indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within twenty years from the time of contracting the same," etc. Attached to the complaint, as exhibit "A," is a statement of the outstanding warrant indebtedness of the county sought to be funded, and from said exhibit it appears that the alleged indebtedness of the county incurred during said two years increased to the extent of $46,455.20; said increase being on the following funds, to wit: General expense fund, $16,146.52; road fund, $27,110.11; scalp fund, $3,198.57 (the latter being warrants issued for bounties on rabbit scalps). For all of said alleged indebtedness, warrants were drawn on said respective funds. From said exhibit it appears that on the twenty-third day of December, 1895, the following warrants were drawn on the road fund, viz.: No. 1, amount $2,500, part payment of Caldwell bridge contract; No. 2, amount $1,400, part payment Caldwell bridge contract; No. 219, amount $1,000, balance on Caldwell bridge contract; No. 3, amount $100, Parma bridge contract; No. 214, amount $4,444, Parma bridge contract; and on April 15, 1895, No. 92, amount $5,350, balance on Parma bridge. Thus, it will be seen that in the construction of the two bridges there was an attempt to create an indebtedness aggregating $14,794.

But it is insisted that the judgment below was proper for the reason that the complaint does not show what the revenues for the different funds were for the two years named. It would have been better for the complaint to have shown this, and, while the complaint is imperfect, yet we think it shows a cause of action. It is alleged in the complaint that warrants, as above mentioned, to the extent of $46,455.20, were issued during the years of 1894 and 1895, and that the respondent commissioners were threatening to issue and about to issue and

sell bonds of said Canyon county to fund the said warrants. It does not appear what the aggregate warrants issued by the officers of Canyon county for said two years are. So far as the pleadings are concerned, we cannot tell how much revenue was paid into the county treasury during said two years, how much was paid out, or how much was left in the treasury. But a reasonable inference from the facts pleaded is that the expenditures exceeded the revenue to the extent of the proposed bond issue; and, if this is not correct, but, on the other hand, it be true that there remained a sufficiency in the treasury to pay said warrants, then the authority to issue said bonds does not exist, and their issurance should be restrained. If, on the other hand, the expenditures for said two years exceeded the revenue for those years to the amount of the proposed bond issue, then the authority to issue said bonds cannot be recognized, unless the requirements of the constitution and laws have been complied with in incurring the debts sought to be refunded. In solving this question it is necessary to determine whether the building of a bridge, and the payment of bounties for rabbit scalps, are ordinary and necessary expenses of a county. It will be seen that the two terms are used conjunctively; hence, to come within the constitutional proviso or exception, expenditures made in excess of the revenues of any current year must not only be for ordinary expenses, such as are usual to the maintenance of the county government, the conduct of its necessary business, and the protection of its property, but there must exist a necessity for making the expenditure at or during such year. In the case of *Bannock Co. v. C. Bunting & Co.,* 4 Idaho, 156, 37 Pac. 277, this court, in construing section 1762 of the Revised Statutes, held that the purchase of a site for a county courthouse, and building a courthouse, "is clearly not among the ordinary and necessary expenses of the county." In that case this court further said: "It is clear that, if the commissioners could incur a debt for a courthouse site at a cost of $4,000, they might purchase one at a cost of $10,000, and proceed to erect a courthouse at a cost of $20,000, all of which would be in direct violation of the constitution. It is, of course, the duty of commissioners to provide a suitable place for holding

of the courts and public offices, jails, etc.; but such rooms must be temporarily provided, at as little expense as is consistent with providing suitable quarters, until the question can be submitted to the people." What has been said with reference to building a courthouse applies to the building of a bridge or other public improvement, within the letter and spirit of the constitution and statutes. We conclude that the building of a bridge and the payment of scalp bounties are not ordinary, but extraordinary, expenses, and, being such, cannot be created in excess of the revenue for the fiscal year in which they may be incurred without the assent of two-thirds of the electors of the county voting at an election duly called and held. It is true that an election was held to ascertain the will of the electors of Canyon county as to whether bonds should be issued "for the purpose of funding the outstanding indebtedness of said Canyon county incurred prior to January 14, 1895, and as evidenced by the outstanding warrants of said Canyon county." But the record does not show that the question of incurring the debts for building the Parma and Caldwell bridges, amounting to about $15,000, was submitted to the electors by petition or otherwise. Under section 1762 of the Revised Statutes, a bridge cannot be built at a cost to exceed $1,000 unless one-third of the taxpayers who are voters of the county petition therefor, but since the adoption of our constitution this provision of the statute only applies when the revenues for the fiscal year are not exceeded; for if such expenditure exceeds, when added to the necessary expenditures of the county for the fiscal year, the revenue for that year, then such bridge cannot be built without a two-thirds vote, as provided in section 3, article 8, of the constitution. We are aware that bridges are useful and important and of great convenience to the public. But the authority of boards of commissioners in creating debts is limited by the constitution and statutes of the state, and must be exercised within those limits, and at least with a substantial compliance of the mode prescribed by such constitution and statutes. It is not only the duty of ministerial officers, but of judicial officers as well, to support the constitution and laws of the state, but all of such officers are bound, under the solemn obligations of the

official oath, so to do. No officer can support the constitution by ignoring and violating its plain provisions. The duty of saying that the commissioners of Canyon county have violated the constitution, while a painful one, is nevertheless a duty which cannot and should not be evaded. In passing upon the question before us, we do not desire to be understood as passing on the material facts of the case, or as deciding the validity or invalidity of the warrants in question. The demurrer confesses the fact that the commissioners of Canyon county failed to make provision for paying the principal and interest of the alleged indebtedness as required by the constitution. For this reason, if for no other, the demurrer should have been overruled. The provisions of the constitution are mandatory in this regard, and must be complied with. If boards of county commissioners are permitted to violate, disregard, and set at naught one plain provision of the constitution, then they may violate any and all provisions of that instrument, and the people who pay the taxes and bear the burdens of government are without protection, and at the mercy and whims of county commissioners. In the case at bar it appears that one plain provision of the constitution has been disregarded. On the other hand, it does not appear that in incurring the extraordinary expense of building the bridges at Caldwell and at Parma, and in rewarding rabbit destroyers, the provisions of the constitution and of the statutes have been complied with. In such case, it appearing that the commissioners have violated their duty in one matter, we will not presume that they have performed their duty in other matters pertaining to the same subject. But counsel for both parties say that this is a friendly suit, brought to determine in advance the legality of a proposed issue of bonds, and that the facts are not all before the court, and for that reason the court should presume that all of the proceedings were regular. In such cases this court will not say that the proposed issue of bonds is legal unless it affirmatively appear by the record that all of the provisions of our constitution and statutes in force relating to the subject matter have been complied with. It was admitted by the attorney general on argument, that the record in this case did not show all the facts which should appear. And he contended that

there was not enough in the record to justify this court in passing on the validity or invalidity of the proposed issue of bonds.

The decision in *Morgan v. Board* (decided by this court April 6, 1895), 4 Idaho, 418, 39 Pac. 1118, is somewhat in conflict with the views herein expressed, and we think should, to some extent, be modified. The remedy to correct errors and irregularities in the action of a board of commissioners acting in a matter over which such board has jurisdiction is solely by appeal. But where a board of commissioners, in violation of the constitution, incurs a large debt in excess of the revenues for the fiscal year in which they assume to incur such debt, without submitting the question of incurring such debt to the voters, and providing for payment of the interest and principal thereof, as provided by the plain provision of the constitution and statutes of the state, such board is not acting within its jurisdiction; and the action of the board in making such an order is void, and may be attacked directly, indirectly, or collaterally, at any time or place. To hold otherwise would give the boards of commissioners power to do indirectly what the constitution forbids. The case of *Picotte v. Watt,* 3 Idaho, 447, 31 Pac. 805, and that of *Rogers v. Hayes,* 3 Idaho, 597, 32 Pac. 259, have no application to the case at bar. In the former the plaintiff sought to enjoin the county treasurer from paying a number of warrants, and in the latter case the plaintiff was seeking by *certiorari* to review an order made by a board of commissioners in disregard of the appeal provided by statute. In *County of Ada v. Bullen Bridge Co.,* ante, p. 188, 47 Pac. 825, this court held that the county could not sue in equity to cancel warrants issued without authority, but should sue at law, under section 4928 of the Revised Statutes, and compel the holder of the warrant to establish his rights therein. In the case at bar the relief sought is not to cancel written instruments, nor to review the action of the board of commissioners in making an appealable order, but to prevent the county commissioners from doing the threatened act of changing non-negotiable instruments, whose validity is questioned, into negotiable instruments. This relief is purely equitable, and we know of no remedy at law to prevent such act. If the county

commissioners may, in the face of the constitution, create a debt that the constitution pronounces void, and then change the form of the debt into a negotiable instrument, thus endangering the county, to at least expensive litigation, then the object and intent of the constitution is thwarted, and the commissioners possibly permitted to do indirectly what they are positively prohibited from doing directly. In *Bannock Co. v. C. Bunting & Co., supra,* this court suggested to the commissioners of Bannock county that they should rent suitable rooms for the courthouse and officers until they should submit the question of building a courthouse to the voters of their county. We now suggest to all county commissioners that they should not incur any debt by building bridges in excess of the public revenue of their county without submitting the question of building such bridges to the voters of their county. The framers of the constitution intended that the several counties of the state should be placed upon a cash basis, and that the incurring of heavy debts by the counties should not occur unless the people of the county should so authorize. The judgment appealed from is reversed, and the cause remanded, with instructions to overrule the demurrer, and for other proceedings consistent with this opinion.

Sullivan, C. J., and Huston, J., concur.