Argument for Appellant.

(No. 4545.   July 28, 1927.)

R. GLAVIN, Respondent, v. SALMON RIVER CANAL COMPANY, LTD., a Corporation, Appellant.

[258 Pac. 532.]

WATER RIGHTS — REASONABLENESS OF USE — BENEFICIAL USE — PROPRIETOR'S RIGHT—BY-LAWS OF OPERATING COMPANY HELD ILLEGAL AND VOID.

1. Any property rights in water acquired by an appropriator must be considered and construed with reference to reasonableness of use to which water is applied or is to be applied.

2. Under C. S., sec. 5640, water user may not take more of water to which he is entitled than is necessary for beneficial use for which he has appropriated.

3. Extent of a proprietor's right to use water until his needs are supplied is dependent on his necessities, and ceases with them.

4. By-law of corporation operating water project in Salmon Carey Act Segregation, authorizing individual water user to carry over for personal storage such water as had been allotted but not used, subject to certain restrictions, *held* illegal as contrary to public policy requiring water users to take only such water as necessary for beneficial use for which it was appropriated.

APPEAL from the District Court of the Eleventh Judicial District, for Twin Falls County.   Hon. T. Bailey Lee, Judge.

Action to enjoin alleged illegal distribution of water. Judgment for plaintiff.   *Affirmed.*

James R. Bothwell, for Appellant.

The rule in question, "Rule 5" of appellant company, is not unreasonable in operation from the settler's standpoint.

Publisher's Notes.

1. Rights of appropriator limited by use, see note in L. R. A., 1916B, 1015.   See, also, 27 R. C. L. 1273.

4. Right to store appropriated water, see notes in 46 L. R. A. 322; 17 L. R. A., N. S., 329.   See, also, 27 R. C. L. 1274.

See Waters, 40 Cyc., p. 716, n. 94, 95, p. 832, n. 23 New.

(*State v. Twin Falls-Salmon River L. & W. Co.*, 30 Ida. 41, 166 Pac. 220; *Sanderson v. Salmon River Canal Co., Ltd.*, 34 Ida. 145, 199 Pac. 999; *Glavin v. Salmon River Canal Co., Ltd.*, 39 Ida. 3, 226 Pac. 739; *Caldwell v. Twin Falls-Salmon River L. & W. Co.*, 225 Fed. 584; *Twin Falls-Salmon River L. & W. Co. v. Caldwell*, 242 Fed. 177; *Twin Falls-Salmon River L. & W. Co. v. Alexander*, 260 Fed. 270; *Twin Falls-Salmon River L. & W. Co. v. Davis*, 267 Fed. 382; *Twin Falls-Salmon River L. & W. Co. v. Caldwell*, 272 Fed. 356.)

The operation of the rule does not affect vested rights. (*Twin Falls-Salmon River L. & W. Co. v. Caldwell, supra; Boley v. Twin Falls Canal Co.*, 37 Ida. 318, 217 Pac. 258; *Sanderson v. Salmon River Canal Co., Ltd.*, 34 Ida. 303, 26 A. L. R. 292, 199 Pac. 999.)

There is no legal objection to the plan embodied in "Rule 5." (C. S. secs. 5569, 5624, 5625; *Basinger v. Taylor*, 36 Ida. 591, 211 Pac. 1085; *State v. Twin Falls Canal Co.*, 21 Ida. 410, 121 Pac. 1039, L. R. A. 1916F, 236; *State v. Twin Falls-Salmon River L. & W. Co., supra; Sanderson v. Salmon River Canal Co., Ltd., supra; Vinyard v. North Side Canal Co.*, 38 Ida. 73, 223 Pac. 1072; *Coulson v. Aberdeen-Springfield Canal Co.*, 39 Ida. 320, 227 Pac. 29; *Albrethsen v. Wood River Land Co.*, 40 Ida. 49, 231 Pac. 418.)

"Rule 5" promotes a higher efficiency in the use of water. (*Van Camp v. Emery*, 13 Ida. 202, 89 Pac. 752; *Niday v. Barker*, 16 Ida. 73, 101 Pac. 254; *Farmers Co-op. Ditch Co. v. Riverside Irr. Dist.*, 16 Ida. 525, 102 Pac. 481; *Stickney v. Hanrahan*, 7 Ida. 424, 63 Pac. 189; *Clark v. Hansen*, 35 Ida. 449, 206 Pac. 808; C. S., sec. 8529.)

R. Glavin, *pro se.*

BRINCK, Commissioner.—Plaintiff is the owner of land in the Salmon Carey Act Segregation, the defendant being the operating company for the project, which at the time this suit was commenced embraced some 35,000 acres of land,

in connection with which project water rights existed. Plaintiff owns a water right for his land purchased from the Carey Act construction company, and is by virtue thereof a stockholder in the defendant corporation.

The duty of water on this project is fixed, according to a stipulation in the record, at two and one-third acre-feet per acre, and the water for the project, which is practically all storage, is usually insufficient to supply that amount. Indeed, it is stipulated that the average supply does not exceed 76 per cent of said amount, and a year in which a full supply has existed has more than once been followed by a year in which less than one-half of the required amount has been available. In 1919, a by-law hereinafter referred to as Rule 5 was adopted by the defendant company, providing in part as follows:

"In order to encourage the greatest practical economy by individual water users from year to year, each water user will be entitled to carry over for use the following season as individual or personal storage, such water as has been allotted to him but not used, subject, however, to the restrictions hereinafter set out. Water held as 'individual storage' shall become a part of 'general storage' in case maintenance charges become delinquent upon the shares for which water has been reserved. Each water user shall be considered as having used the minimum allotment, whether any water has been used or not."

Deliveries of water were made under the rule in 1920, 1921 and 1922. In the year 1923, some of the water users had left over from the preceding years, varying amounts of the so-called individual storage. According to the allegations of the complaint, of a total of some 36,000 acre-feet of water in the reservoir in December, 1922, about 16,000 acre-feet was so recognized by defendant as individual storage to the persons entitled thereto under the rule, notwithstanding the fact that the amount of water in the reservoir was entirely inadequate for proper irrigation of the lands within the project, even if distributed *pro rata* without reference to individual storage rights. If distributed under Rule 5, the

lands not having individual storage would of course suffer still more. To enjoin distribution in accordance with Rule 5, this action is brought, the rule being alleged to be illegal and void and contrary to public policy. The trial court found facts to be as alleged, and, as a conclusion of law, found that Rule 5 was illegal and void; and by its decree enjoined distribution in accordance with said rule or on any other basis than on a *pro rata* acreage basis for all the water contained in the reservoir. From the decree the defendant appeals, the assignments of error in general attacking the conclusion of law above mentioned and the decree based thereon.

The provisions of Rule 5, in addition to those above quoted, are carefully worked out to protect, so far as possible, the rights of the owners of general storage against any encroachment upon the general storage by those claiming individual storage; deductions being provided from the individual storage for transportation, evaporation, and other losses. How definitely the natural losses properly chargeable to the individual storage can be determined, does not appear from the record. Apparently, however, a loss of from 30 to 33 per cent per year is thus deducted, so that owners carrying over individual storage for two years, as some have done, suffer upwards of 50 per cent natural losses in the amounts originally conserved by them. In addition, there is deducted and considered as general storage the minimum allotment fixed by the defendant's board of directors for each year, which minimum varies from year to year, being as high during one of the years involved as one acre-foot per acre.

The theory of the appellant is that this rule tends toward conservation of water, and gives the careful user an advantage, to which he is entitled, over the more prodigal user; that unless the rule is given effect, each water user will use all the water he is entitled to in any one year, even though by conservation and careful handling, a portion of the water stored in a year of full supply might be saved for the following year, in which the supply will probably be scant;

that unless any water user can himself have the benefit the following year of such conservation, there is no incentive to save the water, and he will use his whole allotment; and that, under the conditions obtaining in the project, it is highly desirable that as great an amount as possible be carried over. It is pointed out that some water users are willing to sacrifice some of their crops in one year with the expectation of raising more profitable crops the succeeding year; and that others acquire individual storage to enable them to plant classes of crops which they know would be an utter failure in event of a short water supply. It is further argued that no one of the settlers is entitled in any one year to more than his proportion of the water stored, and that he therefore has no rights in the portion of the water stored belonging to another water user, and is in nowise injured by the application of the rule, and that Rule 5 has resulted in a higher degree of efficiency in the use of water than any other scheme that might have been adopted.

Viewing the question with reference only to the considerations urged by appellant, there is considerable reason in support of the rule. If a farmer irrigating the whole of a specific tract in an unusual year of full supply, by careful handling of the water allotted to him conserves a portion of it against the following season, in which the supply is apt to be insufficient, it may appear unjust to grant his neighbor who had the same opportunity of conserving a like portion of his own supply, but who failed to do so, the right to share in the conserved water. But the by-law in question as it now exists seems to admit of many other contingencies which are not consistent with the reasonable use of water contemplated by our law of appropriation. Under the rule, it is entirely possible for a land owner to allow his land to remain entirely idle, thus carrying over all of his water supply in excess of the minimum allotment to the next season, at a loss of 30 per cent thereof, or to the second ensuing season, at a loss of 50 per cent thereof, and so on indefinitely with an ever increasing loss; and to still maintain his right to hoard the same as against other users who could

and would have made beneficial use of the water in the year of its original storage; and as a matter of fact the record shows that this is done to some extent. It is entirely possible, also, for one owning a water right to speculate with it, rather than to make a beneficial use of it, allowing his land to lie idle and holding the water as individual storage until a season when he can dispose of it to some needy water user at a price exorbitant or otherwise; and the record shows that some owning lands within the project, but not cultivating or irrigating them, have been able the following year to dispose of their individual storage rights at varying prices, in one instance realizing $10 an acre for such stored water. It also appears that those who by reason of farming large tracts, are able to use the same water in more than one place, or who, by reason of favorable location, are able to avail themselves of waste water coming from their neighbors' fields, can save some of their allotment, without sacrificing full irrigation of their lands.

The determination of the right to claim, as individual storage, water stored in previous years, involves a consideration of the nature of the right acquired in the year of its storage.

[1] It has been variously held that one diverting water becomes, after the diversion and when the water is confined within his own reservoirs or works, the owner of the *corpus* of the water; but such decisions, as is pointed out in *Gunnison Irr. Co. v. Gunnison Highland Canal Co.*, 52 Utah, 347, 174 Pac. 852, have been under particular facts and conditions, and the nature of the property rights has been construed with reference to particular purposes. So far as we know, no court has held that water appropriated under statutory provisions similar to ours from a stream for irrigation purposes, becomes the personal property of the appropriator in such a sense that he can claim a property right in it without reference to the beneficial use he makes of it; and we think it clear that whatever may be the exact nature of the ownership by an appropriator of water thus stored by him, any property rights in it must be considered and construed

with reference to the reasonableness of the use to which the water stored is applied or to be applied.

[2] It is against the public policy of this state, as well as against express enactments, for a water user to take more of the water to which he is entitled than is necessary for the beneficial use for which he has appropriated it. (*Coulson v. Aberdeen-Springfield Canal Co.*, 39 Ida. 320, 227 Pac. 29.)

"No person entitled to the use of water from any such ditch or canal, must, under any circumstances, use more water than good husbandry requires for the crop or crops that he cultivates. . . . . " (C. S., sec. 5640.)

[3] The allotment by the defendant corporation of a specific number of acre-feet to the owner of a water right is necessarily conditioned upon, and the rights thereunder are limited by, the provisions of this statute. Public policy demands that whatever be the extent of a proprietor's right to use water until his needs are supplied, his right is dependent upon his necessities, and ceases with them. This, in effect is the holding of *State v. Twin Falls Canal Co.*, 21 Ida. 410, 441, 121 Pac. 1039, L. R. A. 1916F, 236; *Hutchinson v. Watson Slough Ditch Co.*, 16 Ida. 484, 133 Am. St. 125, 101 Pac. 1059; *Coulson v. Aberdeen-Springfield Canal Co., supra.*

[4] Though a Carey Act water user is allotted two and one-third acre-feet per acre of land, he has no right to claim it if he allows his land to lie idle; and, if by reason of available waste water, good husbandry does not require the full use of his allotment in addition thereto, he is not entitled to the portion not so required as against other water users in the same project who are not receiving the full amount reasonably required for proper irrigation of their land. Regardless of whether, in the present case, the abuses growing up under the operation of Rule 5 have been slight (and the record does not show them to have been otherwise), the possible abuses are so apparent that this court cannot say, as a matter of law, that the rule in its present form should be given the sanction of judicial approval. In so far as the rule recognizes, as it does, a property right in water allotted

to a tract all or a portion of which is left idle, uncultivated and unirrigated, or which does not require the full allotment for complete irrigation, it gives rise to a claim of property which the law should not and does not recognize. Nor has a 30 per cent loss per season, in carrying water over from year to year, been satisfactorily shown by the record in this case to be consistent with an economical use of water nor with its beneficial use. We think the holding of the trial court, that distribution of the water in the reservoir cannot be lawfully based upon the by-law as it now exists, was proper.

We recommend that the judgment be affirmed.

Varian and McNaughton, CC., concur.

The foregoing is approved as the opinion of the court and the judgment is affirmed. Costs awarded to respondent.

Wm. E. Lee, C. J., and Budge and Taylor, JJ., concur.

Givens, J., dissents.

T. Bailey Lee, J., disqualified.

Petition for rehearing denied.