(No. 6927.   July 9, 1941)

MAUDE KNUTSON, as Administratrix of the Estate of Stener Knutson, deceased; MAUDE KNUTSON, as Administratrix of the Estate of Steve A. Knutson, deceased; and OLE E. KNUTSON, Respondents, v. B. F. HUGGINS, Appellant.

(115 Pac. (2d) 421)

Cox, Ware & Stellmon, for Appellant.

Leo McCarty, for Respondents.

HOLDEN, J.—Tammany Creek, or Tammany Hollow Creek, is a small stream situated about six miles south of Lewiston, Idaho, originating on Tammany Flats and flowing westerly into the Snake River. The source of the stream is drainage and seepage water from the Lewiston Orchards, located to the north, and certain springs rising west of a landmark known as the Old Horse Ranch. The water flows through or by the properties of defendant William Ehlert, Jr., appellant B. F. Huggins, and respondents, into Snake River, in that order.

April 10, 1939, Stener Knutson, Steve A. Knutson and Ole E. Knutson filed a complaint in the District Court of the Tenth Judicial District for Nez Perce County against B. F. Huggins, William Ehlert, Jr., and Nellie Ehlert, his wife, praying their right to the use of 0.93 of a cubic foot per second of the waters of this stream be adjudicated and declared prior and superior to any alleged right of such defendants, and that the defendants be enjoined and restrained from interfering with or in any manner obstructing the flow of such water. The complaint alleged,

inter alia: the giving of notice of water right in 1879, and an amendment thereof in 1885, by respondents' prececessors; the application of the water to a beneficial use for a period of 50 years; that respondents used all of the water of the stream for a period of 25 years immediately preceding the commencement of the suit; that the land was arid in character and required irrigation; that since 1936, without right, defendants Ehlerts had been diverting and using said water; that in 1939 defendant Huggins had obstructed the flow of the water in the stream and interfered with respondents' use of the same by building a storage dam and reservoir.

Huggins answered and cross-complained, alleging his predecessors in interest filed notice of water right in 1883, and that he and his predecessors had been applying all the waters of the creek to a beneficial use for 56 years preceding the commencement of the suit. He also alleged the application for and issuance of a permit to construct a storage dam and reservoir; that such dam had been erected and water stored in accordance with the provisions of his permit; that the water was applied to a beneficial use, and that the dam in no manner obstructed or interfered with respondents' water right, the priority of which was denied.

The Ehlerts also answered and cross-complained, asserting a water right based on notices given in 1883 and also claiming a prescriptive right. The trial court found against them and for respondents. They have not appealed, hence we are not here concerned with their claims to the water of Tammany Creek.

Before the trial Stener Knutson died and his administrator, Steve A. Knutson, was substituted as a party. Subsequent to the trial Steve A. Knutson died and the administratrix of the estate of Stener Knutson, and of the estate of Steve A. Knutson, were appointed and substituted as parties.

The case was tried to the court commencing April 8, 1940. Findings of fact and conclusions of law were made and filed September 16, 1940, and judgment entered and filed the same day, whereby respondents were decreed a

prior and superior right, free from obstruction or interference of any nature by defendants, to the use of 0.93 of a cubic foot per second of time of the waters of the stream, as claimed by them. From this judgment Huggins alone appealed.

Appellant complains the trial court erred in finding "that the defendant B. F. Huggins, or his predecessors in interest have never used, or diverted, or put to a beneficial use 1.00 cubic feet of water per second of time, or any other number of cubic feet of water per second of time of the waters of said Tammany Hollow Creek upon the lands now owned by the defendant B. F. Huggins for more than 25 years prior to the year 1939," and in decreeing to respondents a prior and superior right to use the water claimed by them.

Supporting this finding there is the testimony of George Burrill, Charles Cox, Wessell Kinney and G. H. Mays, testifying for respondents, as well as the testimony of Ole and Steve A. Knutson. Burrill testified he had observed the lands involved in this controversy since 1929 and that only the Knutson land had been irrigated. Cox testified he had observed these lands from 1912 to 1920 and that the Huggins land had not been irrigated since 1912. Kinney saw no irrigation on the Huggins land in 1916. Mays said there had been no irrigation since the construction of the railroad (1914), nor during the period 1919 to 1927, except maybe for a year. Ole Knutson and Steve A. Knutson testified they used all of the water flowing in the stream up to the time of the alleged interference, and that there was no irrigation on the Huggins land after 1914 when the railroad went through.

Also supporting this finding is substantial evidence to the effect that when the railroad was constructed across the Huggins land in 1914, it cut through and across the Huggins ditches, making it impossible to irrigate the Huggins land with water from Tammany Creek, and there is no evidence these ditches were ever restored.

Against this finding there is the testimony of Gregory Eaves and James Barkley, called by appellant. Eaves testified the Huggins land had been irrigated ever since

1910, except the period from 1917 to 1921, of which he had no knowledge; that the north side of the land was not irrigated after the railroad went through (1914) and that there had been a decline in the amount of water used during the period from 1917 to 1927. Barkley testified that after the railroad went through only a small patch was irrigated—from 12 to 15 acres. In addition to that, there is some evidence the Knutsons, during a period when they held the Huggins land under contract to purchase, irrigated about 7 acres of the Huggins land with the water of Tammany Creek claimed by them in this suit.

█ While it appears from the foregoing there is a substantial conflict in the evidence, the evidence nevertheless would be amply sufficient, if undisputed, to support the finding and decree. This court has uniformly held the finding and judgment of a trial court made upon conflicting evidence will not be disturbed where there is substantial evidence to support them. *Harp v. Stonebreaker*, 57 Idaho 434, 438, 65 P. 2d 766; see also *State v. Snoderly*, 61 Idaho 314, 318, 101 P. 2d. 9, where a long list of cases is collected.

█ The water claimed by appellant not having been used for a period of approximately 25 years, as found and decreed by the trial court, and the right to use it, therefore, having been lost by abandonment, if the right ever existed, it is rather immaterial so far as appellant is concerned, whether respondents' right dates from the fall of 1879 or the spring of 1885. It is clear the court inadvertently fixed the year 1879 as respondents' date of priority instead of 1885, in that the court found respondents' right did not originate until the year 1885, but this could not be prejudicial as argued by appellant.

█ Appellant further complains the decree of the trial court treats the dam constructed by him across Tammany Creek as an obstruction and wrongful interference with the flow of respondents' water and thus, in effect, that the decree enjoins and restrains the maintenance of such dam in the stream. Chapter 2 of Title 41 (Sections 41-202—41-214, I. C. A.) provides for the appropriation

of flood and winter flow waters by the construction of dams and reservoirs. Appellant pleaded the issuance to him in 1939 of a permit (by the Department of Reclamation) to construct a dam in and across Tammany Creek for the purpose of storing the flood and winter flow waters of Tammany Creek for irrigation purposes. Such water was not claimed by nor decreed to respondents. Upon the trial appellant proved the construction of the dam covered and as provided by the permit. There is no finding that such permit (No. R-659) was in any respect defective or invalid, nor that the reservoir was not constructed in strict conformity with the terms of the permit. Therefore, the maintenance of the dam in and across the stream and the storage of flood and winter flow waters, could not, because authorized by statute, constitute a wrongful interference with respondents' right to the use of the water decreed to them provided appellant releases during the irrigating season the amount of the natural flow of Tammany Creek discharging into his reservoir, with such additional amount as may be required, if any, to deliver to the headgates of respondents the amount of the natural flow of the stream discharging into the reservoir, at no time, however, to exceed 0.93 of a cubic foot of water per second of time.

It is further complained the trial court erred in decreeing appellant "must allow 0.93 cubic feet of water per second of time of Tammany Hollow Creek, or Tammany Creek, to flow down the said stream past the dams and obstructions placed in the said stream by the defendants, and each of them," in that the effect of the decree is to compel appellant to release and permit such water to continuously flow down the stream to respondents whether there is that much natural flow in the stream or not, and whether respondents require or are actually putting the water to a beneficial use. Appellant insists that during the irrigating ssason when respondents do not require and are not actually beneficially using the water, he has a right to use it.

▇▇ We held in *Hutchinson v. Watson Slough Ditch Company*, 16 Idaho 484, 485, 101 P. 1059, that:

"At such times as an appropriator is not using the water under his appropriation, and is not applying the water to a beneficial use, such water must be considered and treated as unappropriated public water of the state, and for such period of time is subject to appropriation and use by others.

"When an appropriator is not using water under his appropriation and during the season not covered by his appropriation, he must allow the water to flow down the bed of the natural channel."

Later, in *State v. Twin Falls Canal Company*, 21 Idaho 410, 411, 429, 121 P. 1039, we adhered to the rule announced in the Hutchinson case, supra, holding: "It is the policy of the law of this state to prevent the wasting of water." And in *Glavin v. Salmon River Canal Company, Ltd.*, 44 Idaho 583, 589, 258 P. 532, we again held:

"It is against the public policy of this state, as well as against express enactments [then Sec. 5640 C. S., now Sec. 41-816, I. C. A.], for a water user to take more of the water to which he is entitled than is necessary for the beneficial use to which he has appropriated it," pointing out that "public policy demands that whatever be the extent of a proprietor's right to use water until his needs are supplied, his right is dependent upon his necessities, and ceases with them," citing and adhering to *State v. Twin Falls Canal Company*, supra, and *Hutchinson, v. Watson Slough Ditch Company*, supra.

It follows then that at such times during the irrigation season as respondents are not using and beneficially applying the water decreed to them, appellant, for such periods of time, has a right to use and beneficially apply such water.

For the reasons hereinbefore stated the judgment must be modified, and it is so ordered, and the cause is remanded to the trial court with instructions to enter a modified decree in accordance with the views herein expressed. Costs to be divided equally between the parties.

BUDGE, C.J., and GIVENS, MORGAN and AILSHIE, JJ., concur.