(No. 7138. December 13, 1944.)

W. K. HULSE, Respondent, v. CONSOLIDATED QUICK-SILVER MINING CORPORATION, a corporation whose charter has been forfeited, and MABEL RICH-ARDSON as Special Executrix of the Estate of F. L. Richardson, deceased; L. CHURCHILL, FRANK MORTIMER and D. E. JOHNS, as surviving directors and

statutory trustees of Consolidated Quicksilver Mining Corporation, a corporation whose charter has been forfeited, and MABEL RICHARDSON, as Special Executrix of the Estate of F. L. Richardson, deceased, and FRANK MORTIMER, Appellants.

(154 P. (2d) 149.)

Creed W. Mullins and Karl Jeppeson for appellants.

Ed. R. Coulter and George Donart for respondent.

DUNLAP, J.—Plaintiff, on January 1st, 1941, was the owner of 169,500 shares of stock of Consolidated Quicksilver Mining Corporation, one of the defendants herein, represented by Certificate No. 265 of the par value of five cents per share, and on or about said date entered into an oral contract with his sister, Vivian Hulse, to sell said certificate, and cause the same to be transferred to her on the books of the corporation. Plaintiff delivered the certificate, together with funds for the transfer fee, to one R. L. Carroll, of the Idaho First National Bank, Weiser Branch, and shortly thereafter, said Carroll, on or about said date, acting as plaintiff's agent, and at his request, contacted defendant Frank Mortimer, who was the Secretary-Treasurer of said corporation, and told him he had the certificate and transfer fees, and requested its transfer to Vivian Hulse. At that time Carroll was told by Mortimer to "let the matter ride for a few days;" that he wanted to talk it over with the other members of the organization, or to think it over himself, and later told Carroll to "turn the certificate and money back to Mr. Hulse" as, "they weren't going to make the transfer." Whereupon the certificate and money were returned as directed.

The certificate was admitted into evidence as plaintiff's Exhibit A. It is assigned to Vivian Hulse, as transferee and contains the signature of W. K. Hulse under date of January 21, 1941, witnessed by one Ruby Vaughn, and authorizes Frank Mortimer who was the Secretary of the corporation, to transfer the stock on the books of the corporation. Hulse testified the transfer form was executed by him, as shown, on or about said date.

It also appears that about the time of the above related conversation, Mr. Hulse made a direct verbal request to Mr. Mortimer, in Weiser, to make the transfer, and was then told by Mr. Mortimer, that "they would not transfer the stock at no time."

Following this, Mortimer, as secretary of the corporation, under date of January 15, 1941, wrote a letter to plaintiff Hulse, on the stationery of the corporation, stating in part as follows: "Supplementing our conversation of the

14th inst., on advice of our attorney we hereby decline to transfer any and all stock of record held in your name *until such time as the corporation is completely financed or until unquestionable proof is submitted by the purchaser that such stock is being purchased at par value."* (Emphasis supplied.) (Plaintiff's Exhibit B.)

During the course of the proceedings in the court below, and subsequent to the filing of the complaint and amendment thereto, and prior to the trial, the charter of the corporation was forfeited and upon order of the trial court, defendants F. L. Richardson, L. Churchill, Frank Mortimer and D. E. Johns were made parties defendant in their capacities as surviving directors and statutory trustees of said defendant company. Mr. Richardson was also president of the corporation.

The complaint contains two causes of action; conversion of the stock certificates above referred to, is alleged in the first cause, and damages therefor are sought against the corporation, and its directors as statutory trustees and from defendants Richardson and Mortimer personally. It is also pleaded as a part of this cause of action that prior to the institution of the action and on May 3, 1941, Vivian Hulse, the assignee of the stock certificate above referred to, had assigned and transferred in writing to said plaintiff Hulse, all her right of action and claims for damage for conversion of the stock, as against the corporation and defendants Richardson and Mortimer. This allegation is supported by the undisputed evidence.

It is pertinent to note here that the assignment thus executed by Vivian Hulse, is a right to recover any damages sustained by Vivian Hulse by reason of the failure to transfer said certificate, and does not transfer to plaintiff the said stock certificate, or any interest therein that may have been acquired under the oral contract above referred to.

On January 25th, 1940, plaintiff Hulse and defendant Richardson, both large stockholders and incorporators of the corporation, as individuals entered into a written agreement with one E. H. Graham, a broker who had been employed by the company to sell its treasury stock. The pertinent provisions in this suit, of that contract, are to the effect that Graham was to sell 300,000 shares of the treasury stock of the corporation, and for each share so sold by

him he was to get a bonus of one share out of the personal stock belonging to Hulse and Richardson, each of the latter to contribute equally to the bonus stock agreed to be paid to Graham. Richardson and Hulse further agreed to pay out of the personal stock belonging to them, to said Graham, a special bonus of 100,000 shares, provided the 300,-000 shares were sold by Graham as therein agreed, each of said parties to contribute one-half of said special bonus stock. It is specifically provided that the agreement shall terminate on November 1, 1940.

The corporations Directors Minutes of February 7, 1940, make reference to this agreement, the agreement having been read at said meeting, and a copy of the same was ordered filed in the Minute Book of the corporation, and in which it is recited the corporation takes over the contract from the individuals.

There is evidence to show that 200,000 shares of stock of the corporation to which Hulse was entitled under prior agreements with the corporation, was withheld by the corporation to fulfill the terms of this agreement and never issued to him and in the second cause of action plaintiff charges conversion by the defendants of a portion of this stock, and seeks damages therefor.

The court found that plaintiff Hulse, and Richardson each deposited with the corporation 200,000 shares of their personal stock to guarantee the payment to Graham of bonus stock under said written contract; that it expired November 1, 1940, and that 54,575 shares of said bonus stock had been issued and delivered to Graham under the contract, one-half of which was deducted from the shares deposited by plaintiff, leaving a balance in the hands of said corporation as trustee, of 175,712½ shares of plaintiff's stock, and that the corporation failed, neglected and refused to re-deliver said shares to plaintiff and said refusal constituted conversion of plaintiff's said stock, and that the corporation was liable for the reasonable value thereof, to-wit: 2½ cents per share. This finding of the court as to the deposit by plaintiff of 200,000 shares is assigned as error, but it is admitted that a deposit of 150,000 shares was made. However, the evidence, although conflicting supports the findings which is to effect that the corporation did retain 200,000 shares of plaintiff's stock, to satisfy the bonus contract above referred to. No other

objections with reference to the number of shares of plaintiff's stock thus retained by the corporation for this purpose and transferred to Graham under said contract, is made by appellants, except they assigned as error the court's finding to effect that 175,712½ shares of this stock remained in the corporation on November 1, 1940. There is evidence to sustain the finding that there was issued to Mr. Graham out of the personal joint stock of Richardson and Hulse, to satisfy the bonus contract, 54,575 shares of stock, one-half of which would be charged to plaintiff. It is thus clear the corporation retained as plaintiff's share of this stock, a total of 172,712½ shares, instead of 175,-712½ shares, as found by the court. However, no part of appellant's objections to the court's findings and decree are based on this clerical error, but it should be corrected in the proceedings hereinafter directed to be taken by the trial court.

During the course of the proceedings in the court below, defendant L. Churchill became deceased, and the action was dismissed as to him.

The court's findings were generally in favor of plaintiff, and based thereon judgment was entered in favor of plaintiff, and against the defendant corporation, and Richardson, Mortimer and Johns, as statutory trustees thereof, and against Richardson and Mortimer personally on the first cause of action, in the sum of $4237.00, together with statutory interest, and on the second cause of action, judgment was against the corporation and said statutory trustees in the sum of $4392.81, with statutory interest. Judgment was not entered against defendants Richardson and Mortimer personally on this second cause of action.

After the entry of judgment, defendant and appellant F. L. Richardson died, and his widow, Mabel Richardson, as special executrix of his estate, was substituted as party appellant for the purpose of this appeal.

In connection with the pleadings, it is proper to state here, it is alleged in the complaint and amended complaint that the refusal to transfer stock certificate No. 265 to Vivian Hulse was pursuant to an unlawful and wrongful conspiracy entered into by the corporation and defendants Richardson and Mortimer, as the directing and managing officers of said corporation, and that the failure of defendants to deliver back to respondent the balance of his un-

used stock which had been left with the corporation for payment of bonus to Graham, was a furtherance of the conspiracy on the part of defendants, who conspired together to delay delivery and to prevent the plaintiff from selling and disposing of said stock, and enjoying the fruits and benefits thereof. Allegations of the specific acts constituting the conspiracy are not contained in either of these pleadings, but they do appear in the supplemental complaint.

We take note of these allegations of conspiracy here for the reason that respondent's attorneys, in support of the judgment as entered, have argued and placed considerable reliance on these allegations, and certain evidence which they claim as supporting the allegations of the conspiracy; however in this connection it must be pointed out that the trial court made no specific findings to substantiate or uphold plaintiff's allegations with reference to the conspiracy, charged to have existed, nor on the evidence which respondent's attorneys claim as showing the execution of the conspiracy, and it does not appear that plaintiff requested findings on these allegations, and he took no cross-appeal herein.

On the appeal, appellants set forth and allege some 24 assignments of error, and we hereafter shall discuss only those which we deem pertinent to the proper consideration of the case before us.

We first take notice of appellants' challenge to plaintiff's right to bring the first cause of action, based on appellants' erroneous contention that the complaint shows that plaintiff Hulse parted with title to stock certificate No. 265 at the time he requested the transfer thereof to his sister, Vivian Hulse, and that, as she had not reassigned said certificate back to him prior to the institution of the action (assigning only her rights and claims for damages accruing to her on account of the wrongful and unlawful failure of defendants and each of them to cause said stock to be transferred), that the allegations contained in said cause do not state facts sufficient to constitute a cause of action.

It is pointed out by appellants that in the pleaded written assignments care is taken not to make a reassignment of the stock certificate by Vivian Hulse, and that in an action for conversion, plaintiff must show legal title in himself.

The argument to sustain this contention, however, fails to take into consideration the terms of the oral contract to sell. Hulse pleaded in the first cause of action, and this is supported by the evidence, that by the terms of this oral contract he agreed not only to sell but to cause to be transferred on the books of the corporation to his sister, said certificate; the evidence is likewise clear that because of the refusal of the corporation to do so, he failed in his agreement to cause the certificate to be transferred on the books of the corporation. This was a condition precedent, therefore it follows the sale was not consummated, and the legal title to the certificate never passed to Vivian Hulse (18 C. J. S., p. 950, sec. 404.) It remained in respondent Hulse; he was the owner of the same at the time of the institution of the action and was the proper party plaintiff.

In view of the persistency with which the corporation had refused to recognize Hulse's right to transfer the certificate, the condition in the oral contract above referred to, was a prudent one, from the standpoint of the proposed buyer, since the certificate would have little value to her if she could not obtain a transfer of the same on the books of the company.

Appellants urge here that the corporation was justified in refusing to transfer this certificate, on the grounds that the certificate had not been delivered to the corporation for transfer, in compliance with Art. 3, Sec. 5, of the by-laws which are to effect that transfers are to be made and entered on the books of the company by the secretary, upon the surrender of the certificate therefor, properly assigned, and for the reason that revenue stamps were not cancelled upon the certificate; and for the further reason that respondent Hulse was selling the stock at a price below the sale price of the corporation, and had induced other persons to file on mining claims of the corporation, and had filed on some himself, and that in other ways he did all he could to make financing of the corporation impossible and that these last enumerated acts were in violation of his contract of May 9, 1940, the terms of which we do not deem material on this point, for the reason that the undisputed evidence shows the corporation persistently refused to make the transfer long prior to the last mentioned date.

It will also be noted that the grounds of refusal to transfer this certificate were stated at or about the time of the refusal thereof by the corporation, and were not the

grounds that it now assigns as justification for its refusal to transfer the stock.

The rule has long been established in this state that a corporation which refuses to transfer stock upon its books must give at the time, its reasons for such refusal, and any reasons not so given are waived, and a defense not asserted at the time of refusal to transfer, cannot be raised in the first instance at the time of trial of the case.

This rule was announced by this Court in the case of *Tobias v. Wolverine Mining Co., Ltd.*, 52 Ida. 576, 17 P. (2d) 388, in the following language: "This brings us to a consideration of the good faith of appellant, and the adequacy of its reasons for refusing to transfer the stock, and whether the reasons are supported by the evidence. It is said in Christy, *The Transfer of Stock*, p. 466, sec. 263: 'All of the reasons for the refusal must be given to the applicant for transfer, as any reasons not given will be considered waived. A defense not asserted at the time of the refusal to transfer cannot be raised at the trial of an action for such refusal.' " Furthermore, sec. 29-415, I. C. A., a part of the Uniform Stock Transfer Law, provides: "No lien or restriction unless indicated on certificate... There shall be no lien in favor of a corporation upon the shares represented by a certificate issued by such corporation and there shall be no restriction upon the transfer of shares so represented by virtue of any by-laws of such corporation, or otherwise, unless the right of the corporation to such lien or the restriction is stated upon the certificate. Provided, however, that nothing in this act shall be construed as modifying or applying to the liability of stockholders to creditors of the corporation or to the right of the corporation to levy and collect assessments against the stock in the manner now or hereafter provided by law relative to said matters." And, in 18 C. J. S., p. 922, sec. 391, we find this statement: "Under the provision of Uniform Stock Transfer Act, sec. 15, restrictions upon the transfer of stock are permitted, provided they are printed on the certificate and are reasonable and not contrary to any law or public policy."

We find no provisions in the stock certificate under consideration, restricting the right to transfer.

It is clear the refusal of the corporation to transfer this stock certificate when requested by respondent to do so, was wrongful, and such wrongful refusal constituted con-

version. The rule is stated in 54 A. L. R., p. 1157, as follows: "It appears to be the general rule that where, either by the by-laws of the corporation or through stipulations contained in the certificate of stock, an issuance of corporate stock or a transfer thereof on the books of the corporation is a pre-requisite to the status of the stockholder, the wrongful refusal of the corporation so to transfer, issue or convert the stock, is an exercise of wrongful dominion over the property, which constitutes conversion. But if the refusal is justified then no unlawful authority has been exercised, and an action for conversion will not lie." (See also Christy, *The Transfer of Stock*, p. 472, sec. 266; 12 Fletcher Cyc, *Corporations*, Perm. Ed., p. 416, sec. 5523; 18 C. J. S., p. 1056, sec. 438B; *Tobias v. Wolverine Mining Co.*, 52 Ida. 576, 17 P. (2d) 388.)

Appellants have properly raised the question of the personal liability of Richardson and Mortimer for the conversion of the stock, and have assigned as error that part of the findings and judgment of the court which place personal liability on them in that connection.

On the other hand, respondent, in support of the judgment entered against these men personally for this conversion, relies upon the following statement set forth in his written argument, as follows: "Officers and directors of a corporation are its agents, and if guilty of official misconduct in connection with their duties, are personally liable to the parties injured, even though such official misconduct constitutes merely a refusal or neglect to protect the rights of the injured party."

We consider this rule applicable under the facts in the cases cited by respondent to sustain this proposition of law, including *Frontier Milling and Elevator Co., v. Roy White*, 25 Ida. 478, 138 P. 825. However, respondent's attorneys have not called our attention to any authority holding officers of a corporation to be individually liable to the owner of the stock for wrongful delay or refusal in making a transfer of stock, and in fact the authority is to the contrary. The rule is stated in 18 C. J. S., p. 1056, sec. 438, as follows: "The officer or agent whose duty it is to register transfers is not individually liable for wrongful delay in making the transfer, or refusal to make it, in the absence of any express statutory provision to the contrary." And, as stated in 13 Am. Jur., p. 436, sec. 368, the reason

for the rule is, "The officer is responsible only to the corporation itself."

In 12 Fletcher Cyc., *Corporations*, Perm. Ed., p. 423, sec. 5525, the rule is stated as follows: "Generally, corporate officers or transfer agents whose duty it is to make transfers on the corporate books are not liable directly to a transferee for a failure or refusal to make such a transfer. Such failure or refusal is merely nonfeasance for which the officer or agent is liable to the corporation alone, and for which, in turn, it is liable to those injured thereby, because a stock transfer agent owes no duty to a stockholder." (See also, Christy, *The Transfer of Stock*, p. 482, sec. 268.)

This same question arose in the California case of *LaCoe v. Wolfe, et al.*, 113 Cal. App. 112, 23 P. (2d) 831. The California Court said: "It seems to be well settled that a person entitled to stock in a private corporation has a right of action for damages against the corporation for the refusal of its officers to transfer the stock to him upon the company records. (*Kimball v. Union Water Company*, 44 Cal. 173, 13 Am. Rep. 157.) It has also been held that a suit in equity is available to such a person, and that ordinarily this is the most complete and most just remedy for compelling a corporation to register a transfer of stock. (*Spangenberg v. Western Etc. Co.*, 166 Cal. 284, 135 P. 1127.) A party claiming to be entitled to such a transfer has the option to compel the same through a suit in equity or to press a claim for any damage suffered. If he seeks damages, his claim is against the corporation since the act or omission complained of is the act of the corporation done through its agent. While a corporation may be liable for such a refusal to act on the part of its secretary, if wrongful, in the absence of any statutory provision, the secretary is not personally liable for such official act. (14 Cor. Juris., 766; Fletcher Cyc., *Corporations*, sec. 3821; Thompson on *Corporations*, (3rd Ed.) 6, p. 309, sec. 4438; *Nicholson v. Morgan*, 119 Misc. 309, 196 N. Y. S. 147; *Cooley v. Curran*, 54 Misc., 221, 104 N. Y. S. 424."

In the case above referred to, reliance was also placed upon the right to recover against the officials of the corporation on the ground of their having conspired to prevent the corporation from making the transfer at the time demand was made therefor, and on that point, the California Court said: "The damage and not the conspiracy is the gist

of such an action as this, and the rule is that a conspiracy will not support such an action unless something is done which, without the conspiracy would give to the plaintiff a right of action. (*Bowman v. Wohlke,* 166 Cal. 121, 135 P. 37, Ann. Cas. 1915B, 1011.) It follows that the failure of the complaint to state a cause of action as against the secretary of the corporation is not remedied by the inclusion of allegations that the directors conspired with him to bring about the result complained of."

█ Furthermore, in the instant case, the facts constituting the conspiracy and the acts which constitute the grounds of aggravament of the conspiracy as alleged in the supplemental complaint, all occurred after the filing of the original complaint, therefore they did not add to or strengthen respondent's position that as a result of the conspiracy he suffered the damages alleged in the first cause of action.

In our opinion, it was error for the court to enter judgment against appellants Richardson and Mortimer, or either of them, personally, on the first cause of action.

With reference to the judgment on the second cause of action, appellants contend that respondent pleads a claim for damages for conversion of only 100,000 shares, and that the findings and judgment for conversion of shares in excess of that number is not supported by the pleadings.

Liberally construed, we are of the opinion the pleadings will support the judgment for the conversion of 172,712½ shares. (Sec. 5-801, I. C. A.)

The most that can be said for this contention of appellants is that there is some ambiguity in the pleadings on this point; it appearing from the allegations that appellants had in their possession as the property of respondent, over 100,000 shares of the 200,000 shares which had been deposited with the corporation for the purpose of the Graham contract, and which the corporation had not sold or disposed of, it then being alleged that plaintiff was entitled to have "said 100,000 shares of stock returned and delivered to him."

The ambiguity now complained of, was alleged in the original complaint, filed May 7, 1941. Demurrer to this complaint was filed May 27, and did not contain as a ground, any objection to such ambiguity. It was overruled on July 12, 1941. The answer to the complaint was filed August

11, 1941. The amendment to the complaint was filed August 28th; and did not change or effect, or have any reference to that part of the ambiguity now complained of. Neither did the supplemental complaint, which was filed December 29, 1941.

■ Demurrers to the complaint as amended and supplemented were filed January 17, 1942 and in these demurrers to the complaint as amended and supplemented, the objection to the ambiguity might be claimed to be made, although that is questionable, since the only allegation as to the ambiguity, is to the effect that the complaint, as amended, and supplemented, is ambiguous, uncertain and unintelligible, in that it cannot be ascertained therefrom, "what shares of stock in said corporation" it is claimed the plaintiff is entitled to have issued to him. This specification does not specifically raise the question as to the number of shares being claimed by plaintiff.

■ If it be contended that this demurrer to the complaint as amended and supplemented, was, in effect, an amendment to the original complaint, then it was filed without leave of the court. We have held that a defendant has a right to amend a demurrer as a matter of course, prior to hearing on the demurrer, but that the practice of filing a number of demurrers to the same pleading by the same party is not permissible. (*Dunbar v. Board of Commrs.*, 5 Ida. 407, 49 P. 409.)

■ In consideration of this demurrer to the complaint as amended and supplemented, the court can look only to the facts as alleged in these pleadings. (*Condit National Bank v. Rogers*, 60 Ore. 189, 118 P. 846, Ann. Cas. 1914A 101; *Condit National Bank v. Rogers*, 60 Ore. 194, 118 P. 848.)

■ This claimed defect in the complaint was not raised or pointed out by the demurrer to the original complaint, which contained the defect, and in view of the facts disclosed at the trial, and it appearing that no rights of appellants were prejudiced or circumscribed in any respect by the ambiguity, we think the judgment on the second cause of action should not be set aside because of the defect in the pleading, since the fair inference that would be drawn therefrom, although not positively stated, is that respondent was seeking recovery for all shares of stock retained by the corporation, and not disposed of under the

Graham contract. (*Marshall-Wells Co. v. Kramlich,* 46 Ida. 355, 267 P. 611; *Medling v. Seawell,* 35 Ida. 333, 207 P. 137; *Stanger v. Hunter,* 49 Ida. 723, 291 P. 1060.)

■ Appellants' main objection to the judgment rendered on the second cause, as we understand it, is based on the contention that Hulse's stock retained by the corporation under the Graham contract, was for promotional purposes, and that there was nothing in the contract or in the minutes of the corporation to suggest that said stock was retained by the corporation in any kind of trust to be returned to respondent if not disposed of under the agreement.

While the agreement contains no specific provisions for return of any unused portion of this stock to Hulse, nevertheless, it is clear the agreement is to the effect the stock was to be used only under certain circumstances for specified purposes; that Graham was to have this stock, provided he met the conditions imposed upon him in the contract of January 25th, 1940. The undisputed evidence is to the effect that pursuant to this contract, he earned only 54,575 shares, one-half of which was to be paid to him out of respondent's stock. There was a limitation in the agreement upon the time in which Graham could earn this bonus and special bonus stock. That time had expired before a demand for the unused portion thereof was made by Hulse upon the corporation. The corporation could have no legal claim to the stock thus demanded, and upon refusal to issue the stock to respondent, became liable for conversion thereof. (13 Am. Jur., p. 399, sec. 320.)

■ The trial court's findings upon the second cause of action are supported by the evidence and conceding there is a conflict therein, these findings cannot be disturbed on appeal. (*Knutson v. Higgins,* 62 Ida. 662, 115 P. (2d) 421; *Chamberlin v. George,* 63 Ida. 658, 125 P. (2d) 307; *Pleasant Valley Irrigation Co., v. Lord,* 62 Ida. 281, 111 P. (2d) 620; *State v. Snoderly,* 61 Ida. 314, 101 P. (2d) 9.)

The judgment on the first cause of action as against Richardson and Mortimer, and each of them, is reversed, and is affirmed as to the other defendants herein.

On the second cause of action, the judgment should be modified in accordance with the views herein expressed, and the cause is remanded with instructions to the trial court to modify its findings and conclusions, in accordance

with the views herein expressed, and to modify its judgment in accordance with the views herein expressed, by awarding to respondent, as against the defendant corporation, and the last board of directors, as statutory trustees thereof, judgment for the conversion of 172,712½ shares of stock at. 2½ cents per share, or for the total sum of $4317.81.

Appellants Mabel Richardson, as special executrix of the estate of F. L. Richardson, deceased, and Frank Mortimer, are entitled to recover from respondent their costs on this appeal, and respondent is entitled to recover from defendant corporation his costs on this appeal, and it is so ordered.

Holden, C. J., Ailshie, Budge and Givens, JJ., concur.